MARJORIE SCHORSCH *v.* JOHN SCHORSCH
(AC 16802)

O'Connell, C. J., and Landau and Kulawiz, Js.

Argued January 11—officially released May 18, 1999

*Robert M. Wechsler*, with whom, on the brief, was *Rhonna W. Rogol*, for the appellant (defendant).

*Gary I. Cohen*, for the appellee (plaintiff).

*Opinion*

LANDAU, J. The defendant, John Schorsch, appeals from the judgment of the trial court denying his postdissolution motion to modify his alimony payments and granting the motion for contempt filed by the plaintiff, Marjorie Schorsch. On appeal, the defendant claims that the trial court improperly (1) failed to rule on the threshold question as to whether there was a substantial

change in circumstances,[1] (2) found that there was no change in the defendant's financial circumstances since the time of the dissolution of the marriage, (3) compelled the defendant to deplete an asset awarded to him at the time of the dissolution and (4) failed to consider the plaintiff's earning capacity in making its financial awards.[2] We reverse in part the judgment of the trial court.

The following facts are necessary for our resolution of this appeal. The judgment of dissolution of the parties' marriage was rendered in August, 1979. The dissolution decree provided, among other things, that the defendant pay the plaintiff alimony in the amount of $3333.33 per month until the death of either of the parties or the plaintiff's remarriage. By motion filed June 23, 1994, the defendant sought to modify his alimony obligation based on the ground of a substantial change in the circumstances of the parties. At that time, the defendant also stopped paying alimony to the plaintiff. On April 22, 1996, the plaintiff moved that the defendant be held in contempt for failing to pay alimony, save for one payment of $2000, since August, 1994.[3]

With respect to the parties' motions, the trial court found that "[a]t the time of the dissolution, the defendant was fifty-two years old. He had yearly income from divers sources totaling $112,000, gross, annually

[1] The defendant's motion to modify alimony, dated June 20, 1994, was filed on June 23, 1994. The motion for contempt, dated April 18, 1996, was filed on April 22, 1996.

[2] In his preliminary statement of the issues on appeal, the defendant included a fifth claim—that a subsequent decision by the trial court, *Harrigan, J.*, which Judge Harrigan later vacated, should be reinstated—which he withdrew in his brief. Although the defendant would have us consider certain portions of his argument despite that withdrawal, we cannot consider issues that are withdrawn.

[3] The parties stipulated that, in the absence of a modification, the defendant was $78,000 in arrears on his alimony payments through August 16, 1996, the date of the hearing on the parties' motions.

according to his financial affidavit filed at the time. The defendant also had a net worth of approximately $925,000. The defendant was an executive . . . in mergers and acquisitions . . . who became involuntarily unemployed in 1990. He looked for other work without success. The defendant at the time of the modification hearing was sixty-eight. The defendant . . . has nonemployment income from several sources. These include social security income, IRA income, trust fund income and, the most substantial, income from a purchase money mortgage. . . . [T]he purchase money mortgage is the result of the sale and financing of a property which the defendant received at the time of dissolution. Approximately $4760 of the $6016 received monthly on the mortgage represents a repayment of the loan balance; the remainder is interest. The mortgage should be fully paid in four years of the hearing."

The trial court denied the defendant's motion to modify and granted the plaintiff's motion to hold the defendant in contempt and entered orders accordingly. This appeal followed.

"A trial court is endowed with broad discretion in domestic relations cases. Our review of such decisions is confined to two questions: (1) whether the court correctly applied the law, and (2) whether it could reasonably have concluded as it did. *Glinski* v. *Glinski*, 26 Conn. App. 617, 620, 602 A.2d 1070 (1992)." (Internal quotation marks omitted.) *Denley* v. *Denley*, 38 Conn. App. 349, 351, 661 A.2d 628 (1995). "We review factual findings of the trial court under a clearly erroneous standard. *Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). We examine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . *Solomon* v. *Hall-Brooke Foundation, Inc.*, 30 Conn. App. 129, 132,

619 A.2d 863 (1993)." (Internal quotation marks omitted.) *Holmes* v. *Holmes*, 32 Conn. App. 317, 319, 629 A.2d 1137, cert. denied, 228 Conn. 902, 634 A.2d 295 (1993).

I

The defendant's first claim is that the trial court failed to rule on the threshold question as to whether there was a substantial change of circumstances when it denied the defendant's motion to modify. In support of his claim, the defendant argues that "[i]t is not clear from the trial court's decision, whether it actually ever made a determination as to changed financial circumstances. The court certainly did not do so expressly." The defendant correctly posits that consideration by a trial court of a motion to modify involves a two tiered, or bifurcated inquiry.

"It is . . . well established that when a party . . . seeks a postjudgment modification of a dissolution decree . . . he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of [the dissolution decree or] the earlier modification." *Borkowski* v. *Borkowski*, 228 Conn. 729, 736, 638 A.2d 1060 (1994). " 'Once a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification.' " Id., 737, quoting *Hardisty* v. *Hardisty*, 183 Conn. 253, 258–59, 439 A.2d 307 (1981). "By so bifurcating the trial court's inquiry, however, [our Supreme Court] did not mean to suggest that a trial court's determination of whether a substantial change in circumstances has occurred, and its determination to modify alimony, are two completely separate inquiries. Rather, [our Supreme Court's] bifurcation of the trial court's modification inquiry was meant to reflect that, under our statutes and cases,

modification of alimony can be entertained and premised upon a showing of a substantial change in the circumstances of either party to the original dissolution decree." *Borkowski* v. *Borkowski,* supra, 737.

It does not escape appellate scrutiny that the question of a substantial change in circumstances was amply addressed by the trial court in its memorandum of decision, in which it notes the defendant's financial status at the time of the dissolution and at the time of the hearing. It found that the defendant's net worth in 1979 was approximately $925,000 with an annual gross income of $112,000. It found the defendant's net worth in 1996 to be nearly $600,000 with an annual gross income of $106,800. The trial court found that the plaintiff was sixty-six years old at the time of the modification hearing. Following the dissolution, the plaintiff was self-employed but had stopped working in 1994 or 1995 for health reasons. She is essentially without assets and receives social security income of $125 per week. She "has marginal income, no assets, and is nearly destitute and in poor health." Although not explicitly, the trial court determined that there was a substantial change of circumstances but denied the defendant's request to modify downward the amount of alimony he must pay.

The defendant argues that the trial court ruled improperly, either (1) by failing to find a substantial change in his circumstances or (2) by finding a substantial change in his circumstances but nevertheless refusing to change the current order. Those alternatives suggested by the defendant are not the only bases for the ruling of the trial court. A fair reading of the decision of the trial court leads us to the more logical and compelling conclusion that the trial court did find a substantial change of circumstances of one or both of the parties and then concluded that the alimony order should remain the same.

## II

The defendant's second claim is that the trial court improperly determined that there was no change in his financial circumstances since the dissolution of the parties' marriage. In view of our conclusion that the trial court improperly considered property awarded to the defendant at the time of dissolution in computing his current income, see part III below, we need not address that claim.

## III

In his third claim, the defendant asserts that the trial court could not legally require him to deplete an asset awarded to him at the time of the dissolution to meet present alimony obligations. The defendant argues that the trial court improperly included in its calculation of his monthly income the principal payments he receives pursuant to a purchase money mortgage he holds on a piece of real estate that was awarded to him pursuant to the dissolution decree.[4] The defendant claims that the trial court's inclusion of principal in his income violates General Statutes § 46b-81.[5] We agree.

The following facts are relevant to this issue. At the time the parties were divorced, the trial court, as part of the parties' stipulated property division, awarded the defendant interest in real estate located in Philadelphia, Pennsylvania. Sometime after the dissolution, the defendant sold the real estate and took back a purchase money mortgage. At the time of the modification hearing, the monthly payments on the mortgage totaled $6800, of which approximately $4800 was principal.

---

[4] The trial court calculated the defendant's gross income at the time of the modification hearing to be $106,800. Of that sum, the defendant claims that approximately $53,000 is attributable to principal payments under the purchase money mortgage.

[5] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree annulling or dissolving a marriage or for legal separation

"Courts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute. *Rubin* v. *Rubin*, 204 Conn. 224, 228–29, 527 A.2d 1184 (1987). Under General Statutes § 46b-81 (a), the statute that enables the trial court to transfer property in a marital dissolution action, the court does not retain continuing jurisdiction over any portion of the judgment that constitutes an assignment of property. *Bunche* v. *Bunche*, 180 Conn. 285, 289, 429 A.2d 874 (1980). Therefore, a property division order generally cannot be modified by the trial court after the dissolution decree is entered, subject only to being opened within four months from the date the judgment is rendered under General Statutes § 52-212a." *Passamano* v. *Passamano*, 228 Conn. 85, 88–89 n.4, 634 A.2d 891 (1993). Therefore, if the principal portion of the purchase money mortgage payments the defendant is receiving were part of the property distribution awarded at the time of dissolution, it may not properly be included in the defendant's income for purposes of calculating a change in circumstances.

"The mere exchange of an asset awarded as property in a dissolution decree, for cash, the liquid form of the asset, does not transform the property into income." *Denley* v. *Denley*, supra, 38 Conn. App. 353 (plaintiff awarded stock options as property in dissolution; money received from exercise of stock options simply conversion of asset); *Simms* v. *Simms*, 25 Conn. App. 231, 234, 593 A.2d 161, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991) (defendant declared capital account as asset in financial affidavit at time of dissolution; when defendant withdrew capital account, he received treasury bond that greatly increased in value at time of redemption; redemption of treasury bonds merely exchange of assets).

pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or wife all or any part of the estate of the other. . . ."

The defendant maintains that the practical effect of including the principal portion of the mortgage payment in his annual income is to force him to deplete an asset already distributed to him as part of the original property division by requiring him to pay progressively that asset to the plaintiff. We agree that the principal payments that the defendant is receiving on the purchase money mortgage he holds is merely an exchange of assets and may not be included in the calculation of his income.

## IV

Finally, the defendant claims that the trial court failed to consider the plaintiff's earning capacity in making its financial awards. He argues that the trial court may consider earning capacity rather than earned income in arriving at its financial awards. He further posits that this principle is particularly applicable when there is evidence that a party voluntarily quits her job or avoids working to reduce or to eliminate actual earnings intentionally, citing *Carey* v. *Carey*, 29 Conn. App. 436, 440, 615 A.2d 516 (1992). The rule cited by the defendant is correct. The flaw in his argument, however, is that the trial court, in its memorandum of decision, specifically addressed the plaintiff's earning capacity when it found that "the plaintiff stopped working for health reasons, namely, emphysema and high blood pressure." Moreover, it implicitly found that the plaintiff did not voluntarily cease her employment to reduce or to eliminate actual earnings intentionally.[6]

In essence, the defendant is challenging the trial court's finding of facts. "As an appellate court, we do not

---

[6] The defendant's claim that the plaintiff testified that she intends to work in the future is also marred. He asks us to conclude factually that which the trial court failed to find. We cannot and will not do so. See *Elderkin* v. *Hamilton Pavilion Health Care*, 40 Conn. App. 943, 944, 672 A.2d 978, cert. denied, 237 Conn. 925, 677 A.2d 947 (1996).

review the evidence to determine whether a conclusion different from the one reached could have been reached. . . . The goal of our analysis is simply to decide whether the trial court's conclusion was reasonable. . . . *Glinski* v. *Glinski*, supra, 26 Conn. App. 620." (Internal quotation marks omitted.) *Denley* v. *Denley*, supra, 38 Conn. App. 354.

The judgment is reversed as to the denial of the motion to modify the award of alimony and the case is remanded for further proceedings on that motion consistent with this opinion.

In this opinion the other judges concurred.