JOAN E. GAY *v.* THOMAS J. GAY
(AC 20755)

Schaller, Mihalakos and Flynn, Js.

(*One judge dissenting*)

Argued March 18—officially released July 9, 2002

*Campbell D. Barrett,* with whom were *Jonathan P. Budlong* and, on the brief, *C. Michael Budlong,* for the appellant (plaintiff).

*Karen S. Gersten,* for the appellee (defendant).

*Opinion*

MIHALAKOS, J. This case presents an issue of first impression before this court. The plaintiff, Joan E. Gay, now known as Joan E. McNulty, appeals from the order of the trial court modifying the alimony award to be paid by the defendant, Thomas J. Gay. The sole issue is whether the trial court improperly considered capital gains realized by the plaintiff to be income when modifying the defendant's alimony obligation. We reverse the judgment of the trial court and remand the case for further proceedings.

The following facts and procedural history are relevant to our consideration of the plaintiff's claim. On December 20, 1996, after a thirty-two year marriage, the plaintiff brought an action seeking a dissolution of the marriage based on an irretrievable breakdown of the marriage. The court incorporated by reference a stipulation entered into by the parties dated December 20, 1996. The stipulated agreement provided, inter alia, that the defendant shall pay alimony to the plaintiff in the amount of $730 per month.[1]

---

[1] Section 8 of the parties' agreement and stipulation for judgment dated December 20, 1996, states in relevant part: "A. The Defendant Husband shall pay alimony to the Plaintiff Wife in the amount of Seven Hundred Thirty ($730.00) Dollars per month, payable in advance on the 1st day of each month, time is of the essence. Said alimony shall be modifiable as provided . . . hereafter. . . . Further, if the Defendant enters into a bona fide retirement prior to age 65 the alimony shall be subject to modification and it is understood that alimony can not be based upon the Defendant's retirement income only and shall be based upon his additional earnings or his earning capacity or both as the case may be."

On September 29, 1999, the defendant moved for a modification of the alimony payments.[2] In his motion, the defendant claimed that his retirement, and the accompanying decrease in income, constituted a substantial change in circumstances. Furthermore, he noted that the plaintiff's income and assets had dramatically increased so that her circumstances had changed for the better. After hearing arguments on the matter, the court reduced the defendant's alimony obligation to $1 per year and ordered the parties to exchange copies of their respective federal tax returns for the following three years.

On October 24, 2000, the court rendered its oral decision regarding the parties' motions for articulation. The court first articulated the basis for its conclusion that there was a bona fide retirement on the part of the defendant. In addition, the court articulated the basis for its conclusion that the parties' income was now in parity and, therefore, the alimony award should be modified. After making certain adjustments to the net income reflected on the plaintiff's financial affidavit,[3] the court found that the defendant had a net income of $1268 per week and the plaintiff had a net income of $1323 per week. On January 3, 2001, the court issued

[2] The relevant portions of the defendant's motion for modification provided: "6. The Defendant has retired as of September 1, 1999 and begins collecting his pension as of September 30, 1999.

"7. Other than his pension, the Defendant has no other source of income.

"8. The Defendant's decrease in income is a substantial change in his circumstances since the time of the dissolution.

\* \* \*

. "10. The Defendant believes the Plaintiff's income and assets have dramatically increased since the date of dissolution so that her circumstances have significantly changed for the better."

[3] The plaintiff's financial affidavit reflected a net income of $709 per week. The court added $195 per week representing a voluntary contribution to an annuity. In addition, the court added $199 per week representing interest and dividends and $220 per week representing capital gains both of which were reflected on the plaintiff's 1999 federal income tax return.

a further articulation of the order pursuant to the plaintiff's request.

The plaintiff argues that the court improperly considered the capital gains that she realized from her investment accounts to be income. Specifically, she argues that because a capital gain represents the appreciation of an asset it cannot be used as the basis for a finding that there has been a substantial change in circumstances. The defendant argues that the appreciation of any asset is a reasonable basis for a court to modify alimony. We conclude, on the basis of our review of the record, the parties' briefs and the relevant case law, that the plaintiff can prevail only if the assets generating the capital gain were acquired by her prior to the divorce and distributed to her pursuant to the divorce decree.

We first set forth our well established standard of review applied in domestic relations matters. "A trial court is in an advantageous position to assess the personal factors so significant in domestic relations cases, and its orders in such cases will not be reversed unless its findings have no reasonable basis in fact or it has abused its discretion, or unless, in the exercise of such discretion, it applies the wrong standard of law." *Crowley* v. *Crowley*, 46 Conn. App. 87, 90, 699 A.2d 1029 (1997).

"[U]nder our statutes and cases, modification of alimony can be entertained and premised upon a showing of a substantial change in the circumstances of either party to the original dissolution decree. . . . Thus, once the trial court finds a substantial change in circumstances, it can properly consider a motion for modification of alimony. After the evidence introduced in support of the substantial change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification . . . it also naturally comes into play in the trial court's struc-

turing of the modification orders." (Citation omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 737, 638 A.2d 1060 (1994); see also General Statutes § 46b-86.[4] The onus to prove the existence of a substantial change in the circumstances is on the party seeking modification. See *Crowley* v. *Crowley*, supra, 46 Conn. App. 91.

"[Our Supreme Court] and the Appellate Court have often described financial orders appurtenant to dissolution proceedings as entirely interwoven and as a carefully crafted mosaic, each element of which may be dependent on the other." (Internal quotation marks omitted.) *Smith* v. *Smith*, 249 Conn. 265, 277, 752 A.2d 1023 (1999). In general, the same factors used by the court to establish an initial award of alimony are relevant in deciding whether the decree may be modified. See *Borkowski* v. *Borkowski*, supra, 228 Conn. 736; see also General Statutes § 46b-82.[5] "More specifically, these criteria, outlined in General Statutes § 46b-82, require the court to consider the needs and financial resources of each of the parties . . . as well as such factors as the causes for the dissolution of the marriage and the age, health, station, occupation, employability and amount and sources of income of the parties." *Borkowski* v. *Borkowski*, supra, 736.

---

[4] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . . This section shall not apply to assignments under section 46b-81 or to any assignment of the estate of a portion thereof of one party to the other party under prior law. . . ."

[5] General Statutes § 46b-82 provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 . . . ."

When determining whether there is a substantial change in circumstances, the court is limited in its consideration to conditions arising subsequent to the entry of the dissolution decree. See *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 382–83, 731 A.2d 330 (1999). "To permit the trial court to reconsider all evidence dating from before the original divorce proceedings, in determining the adjustment of alimony, would be, in effect, to undermine the policy behind the well established rule of limiting proof of the substantial change of circumstances to events occurring subsequent to the latest alimony order—the avoidance of relitigating matters already settled." *Borkowski* v. *Borkowski*, supra, 228 Conn. 738.

To resolve the issue of whether capital gains may be considered as income for purposes of alimony modification, we must engage in an analysis of the statutory construction. Because capital gain is income derived from the sale of property, we must examine two relevant statutes, § 46b-82, the determination of alimony, and General Statutes § 46b-81,[6] the assignment of property and the transfer of title, and how they relate to one another. "Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to

---

[6] General Statutes § 46b-81 provides in relevant part: "(a) At the time of entering a decree . . . dissolving a marriage . . . pursuant to a complaint under section 46b-45, the Superior Court may assign to either the husband or the wife all or any part of the estate of the other. . . .

\* \* \*

"(c) In fixing the nature and value of the property, if any, to be assigned, the court, after hearing the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income. The court shall also consider the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates."

the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter." (Internal quotation marks omitted.) *HUD/Willow Street Apartments* v. *Gonzalez*, 68 Conn. App. 638, 647, 792 A.2d 165 (2002).

Section § 46b-82 mandates that the court consider specific enumerated factors when determining an alimony award, including amount and sources of income. "The court is to consider these factors in making an award of alimony, but it need not give each factor equal weight. . . . As long as the trial court considers all of these statutory criteria, it may exercise broad discretion in awarding alimony." (Internal quotation marks omitted.) *Tevolini* v. *Tevolini*, 66 Conn. App. 16, 23, 783 A.2d 1157 (2001). Thus, the court *must* consider all income of the parties whatever its source may be.

The legislative history of § 46b-82 is, however, inconclusive as to the intended meaning of the word "income." We must, therefore, look to the ordinary meaning of the word. See General Statutes § 1-1 (a); see also *Smith* v. *Smith*, supra, 249 Conn. 281. Income is defined as "a: a gain or recurrent benefit that is [usually] measured in money and for a given period of time, derived from capital, labor, or a combination of both, includes gains from transactions in capital assets, but excludes unrealized advances in value . . . b: value of goods and services received by an individual in a given period of time . . . ." Webster's Third New International Dictionary (1961).

We further note that a capital gain is the "profit realized on the sale or exchange of a capital asset." Black's

Law Dictionary (6th Ed. 1990). "For income tax purposes, a capital asset is defined as all property held by a taxpayer (e.g. house, car, stocks, bonds), except for certain assets listed in [Internal Revenue Code] § 1221." Black's Law Dictionary, supra. Because the profit realized from the sale of an asset is income, a capital gain is income. See 26 U.S.C. § 61.[7] On the basis of the foregoing, "income" includes realized gain from the sale of a capital asset.

This does not complete our inquiry. "It is black letter law that Connecticut is an equitable distribution property state . . . ." (Citation omitted.) *Wendt* v. *Wendt*, 59 Conn. App. 656, 663, 757 A.2d 1225, cert. denied, 255 Conn. 918, 763 A.2d 1044 (2000). "Although it is well established that trial courts have broad equitable remedial powers regarding marital dissolutions . . . it is equally well settled that [c]ourts have no inherent power to transfer property from one spouse to another; instead, that power must rest upon an enabling statute." (Citation omitted; internal quotation marks omitted.) *Smith* v. *Smith*, supra, 249 Conn. 272.

"In fixing the nature and value of the property assigned, and in determining whether alimony will be awarded, and the duration and amount of the award, the court 'shall consider the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate' and needs of each of the parties. General Statutes §§ 46b-

---

[7] Section 61 of title 26 of the United States Code provides in relevant part: "(a) General definition. Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items . . . (3) Gains derived from dealings in property . . . ." Furthermore, "[g]ross income includes income realized in any form, whether in money, property, or services. Income may be realized, therefore, in the form of services, meals, accommodations, stock, or other property, as well as in cash." I.R.C. Reg. § 1.61-1 (a).

81 (c) and 46b-82." *Delahunty* v. *Massachusetts Mutual Life Ins. Co.*, 236 Conn. 582, 592–93 n.11, 674 A.2d 1290 (1996). In its determination of property assignments, the trial court must also consider "the opportunity of each for future acquisition of capital assets and income . . . [and] the contribution of each of the parties in the acquisition, preservation or appreciation in value of their respective estates." General Statutes § 46b-81 (c).

"It is well established that a trial court need not assign specific values to the parties' assets when determining financial orders appurtenant to dissolution proceedings. . . . A trial court acts as the trier of fact when it evaluates the marital estate and determines each party's equitable share." (Citation omitted.) *Smith* v. *Smith*, supra, 249 Conn. 287. "The purpose of a property division pursuant to a dissolution proceeding is to unscramble existing marital property in order to give each spouse his or her equitable share at the time of dissolution. . . . By comparison, the purpose of both periodic and lump sum alimony is to provide continuing support. . . . Hence, once the marital property is divided, the court has fulfilled its responsibility, and, therefore, continuing jurisdiction over divided marital property does not further the goal of the statute." (Citations omitted.) Id., 275.

We conclude that capital gains generated by an asset distributed in the dissolution decree do not fall within the purview of § 46b-86, and by implication, § 46b-82. This is so because the capital gain is merely the appreciation of property previously distributed pursuant to § 46b-81. The court does not have continuing jurisdiction over property distributed at the time of dissolution; General Statutes § 46b-86; and therefore cannot consider the appreciation of such property in its inquiry pursuant to §§ 46b-86 and 46b-82. See also *Schorsch* v. *Schorsch*, supra, 53 Conn. App. 385 (mere exchange of

asset awarded as property in dissolution decree for cash does not transform property into income).

We must now determine whether capital gains realized on property acquired by the plaintiff after the dissolution is income for purposes of § 46b-82. We conclude that if the asset is property that was acquired by the plaintiff after the dissolution and, therefore, not distributed as part of the property assignment, then it is income that must be considered by the court in an alimony modification.

"A conclusion that there has been a substantial change in financial circumstances justifying a modification of alimony based only on income is erroneous; rather, the present overall circumstances of the parties must be compared with the circumstances existing at the time of the original award to determine if there has been substantial change." 24A Am. Jur. 2d, Divorce and Separation § 826 (1998).[8]

"A substantial increase in the dependent spouse's separate property or estate, such as by gift or inheritance, may justify a reduction in alimony." Id., § 833. "The fact that the wife has acquired a substantial amount of property, or that her property has increased in value, after the entry of a decree for alimony or maintenance is an important consideration in determining whether and to what extent the decree should be modified." Annot., 18 A.L.R.2d 10, 74, § 23 (1951). "A single factor, such as an increase in property values, is generally not enough by itself for a court to modify a support award. When an increase in income or assets of the payee-spouse is combined with other factors, such as a decrease in the supporting spouse's ability

[8] We note that the financial affidavit that the parties must submit to the court in all domestic relations matters requires the disclosure of the following for the court's consideration: (1) weekly income; (2) weekly expenses; (3) liabilities; (4) assets; and (5) health insurance.

to pay or the emancipation of a child, changed circumstances may justify modification." A. Rutkin, Family Law and Practice (1990) § 52.02 (2) (b). Furthermore, "[p]rior property divisions rarely have provided grounds for support modifications. This is true even if the property award subsequently is shown to have a negative impact upon the movant." Id., § 52.02 (2) (a) (iii).

"Modification of an alimony award may be proper where either the needs of the recipient spouse or the financial ability of the obligor spouse to pay alimony have changed since the original award was made, as well as where the financial circumstances of both parties have changed. . . . Furthermore, as is true for changes in circumstances more generally, temporary fluctuations in the financial circumstances of the parties normally do not afford a basis for such a modification." 24A Am. Jur. 2d, supra, § 825. "Trial courts should be vested with broad discretion to fashion approaches which will achieve the most equitable results under the facts of each case." (Internal quotation marks omitted.) *Wendt* v. *Wendt*, supra, 59 Conn. App. 667.

The plaintiff argues that her capital gains do not constitute income for purposes of modification of an alimony order. In her argument, the plaintiff finds support in *Schorsch* v. *Schorsch*, supra, 53 Conn. App. 378, *Denley* v. *Denley*, 38 Conn. App. 349, 661 A.2d 628 (1995), and *Simms* v. *Simms*, 25 Conn. App. 231, 593 A.2d 161, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991). Relying on *Bartlett* v. *Bartlett*, 220 Conn. 372, 381–83, 599 A.2d 14 (1991), the defendant argues that increases in assets of any sort may form an appropriate reason to modify alimony.

Although we have found no precedent governing the precise issue presently before us, we are persuaded

that capital gains realized on the sale of an asset acquired after dissolution may be considered by a court in determining whether there has been a substantial change in circumstances. The case law cited by both parties is instructive.

In *Simms*, the plaintiff sought modification of alimony on the basis of moneys received by the defendant in exchange for United States treasury bonds that he held at the time of the divorce. See *Simms* v. *Simms*, supra, 25 Conn. App. 232–33. This court held that "the defendant's redemption of the treasury bonds, which he received when he withdrew his share of the capital assets of Bear, Sterns and Company, was, as the defendant contends, merely an exchange of assets." Id., 235. We reasoned that "[a]lthough a dramatic increase in the income of one of the parties may constitute a substantial change in circumstances, an increase in the value of assets ordinarily will not." Id., 234. Furthermore, the defendant declared his capital account as an asset on his financial affidavit. We concluded that "if the capital account is an asset, the defendant's redemption of the treasury bonds, which he received as a distribution of his capital account, could not be a substantial change in circumstances and could not support a modification of alimony." Id.

In *Denley*, the plaintiff also sought a modification of alimony, arguing that because he had lost an important client, his income had decreased substantially. *Denley* v. *Denley*, supra, 38 Conn. App. 350. The court denied the motion for modification based, in part, on its inclusion of the profit that the plaintiff had received through the redemption of stock options that had been awarded to him at the time of the dissolution. Id. This court agreed with the plaintiff that "because he was awarded the stock options as property in the dissolution decree, any money that he received from the exercise of those stock options was simply a conversion of an asset and

should not have been considered income by the trial court for purposes of assessing whether there had been a substantial change in circumstances." Id., 353. This court held that the trial court improperly included the redemption of the stock options in income, reasoning that the "mere exchange of an asset awarded as property in a dissolution decree, for cash, the liquid form of the asset, does not transform the property into income." Id.

Similarly, in *Schorsch*, the defendant filed a motion for modification of alimony claiming a substantial change in circumstances. *Schorsch* v. *Schorsch*, supra, 53 Conn. App. 380. The defendant, however, was receiving payments toward a purchase money mortgage that he held after the sale of real property awarded to him in the dissolution decree. The trial court considered both the principal and interest payments received by the defendant when it denied his motion for modification. This court reversed the trial court on this ground because the principal balance paid on the purchase money mortgage represented the proceeds from the sale of an asset awarded to the defendant at the time of the dissolution. We held that "the principal payments that the defendant is receiving on the purchase money mortgage he holds is merely an exchange of assets and may not be included in the calculation of his income." Id., 386.

The defendant argues to the contrary and finds support in *Bartlett* v. *Bartlett*, supra, 220 Conn. 372. In *Bartlett*, the defendant was the beneficiary of a revocable trust, the proceeds of which were to be distributed to him upon his mother's death. Id., 374. Because the trust was revocable and its assets had not yet vested in the defendant, the court did not consider the trust proceeds when it first established the amount of alimony to which the plaintiff was entitled. Id., 373–74. Following the death of the defendant's mother, the

plaintiff sought a modification of alimony, claiming that because the defendant had received the inheritance there was a substantial change in circumstances since the original divorce decree. Id., 374. Our Supreme Court agreed with the plaintiff and held that because the defendant's inheritance vested upon the death of his mother, "the trial court was bound to consider that inheritance in ruling on the motion for an increase in alimony, despite the fact that the assets of the inheritance had not yet been distributed to him." Id., 380.

We conclude that the appreciation of an asset that was distributed at the time of the dissolution does not constitute a change in circumstances that the court may consider when deciding whether to entertain a motion for modification of alimony. Furthermore, such an increase in the value of an asset cannot be used as a factor to determine the amount by which alimony is to be modified.

In the present case, the court held that there was a bona fide retirement and, further, that there was a substantial change in the circumstances of the plaintiff. The court first found that the defendant's net income was $28,228 more per year than the plaintiff's gross income at the time of the dissolution. After noting that the defendant had not experienced a significant change in his net income, the court found that the plaintiff had an increase in net income of $37,492 per year from 1996. In its calculation, the court included $11,430 per year representing the income from capital gains.[9] The court,

---

[9] The court found that "[h]er tax returns reflect interest of sixteen hundred and fifty-five, dividends of eight thousand, seven hundred and three, short term capital gain of nine thousand, four hundred and eighteen dollars, and a long-term capital gain of two thousand, twelve dollars for a total of twenty-one thousand, seven hundred, eighty-eight dollars.

"So, she's had a really, after a compilation, a net income increase of thirty-seven thousand, four hundred, ninety-two dollars, four years after her divorce."

however, did not make a finding as to when the assets generating the capital gains were acquired.[10]

If the assets were held by the plaintiff at the time of the decree, the court considered conditions antecedent to the last modification, e.g., the dissolution decree, and thereby applied an incorrect legal standard in determining whether there had been a substantial change of circumstances warranting modification. Accordingly, the court must first determine whether the plaintiff acquired the assets generating the capital gains prior or subsequent to the dissolution decree. Therefore, the court's modification of the dissolution decree without first so doing was an abuse of discretion.

As a final note, we are mindful that capital gains may easily be manipulated by the owner of the asset and are temporary in nature. Further, the capital gains may vary drastically year to year for legitimate reasons. Trial courts have, however, "wide latitude and equitable powers when determining financial orders pursuant to dissolution actions because they require extremely fact

---

[10] The court's further articulation dated January 3, 2001, provided in relevant part: "14. 'State whether the court determined that the plaintiff['s] Paine Webber Dean Witter account represents property that was distributed to the plaintiff in the judgment dated December 20, 1996.'

"The court did not determine that the plaintiff's Paine Webber Dean Witter account represents property that was distributed to the plaintiff in the judgment dated December 20, 1996, for the following reasons:

"1. The point or proposition was not claimed, asked for or argued.

"2. No evidence was introduced by the plaintiff to establish the point.

"3. There are too many missing pieces, so the point or proposition would be purely speculative."

In addition, we recognize that the court further stated in its articulation that "the plaintiff's 1999 tax return revealed dividends—and that all short term capital gains were from stock purchase[d] either in 1998 or 1999, and with the exception of one mutual fund that showed a loss, all long-term capital gains were on stock and notes acquired well after the divorce. All those gains were reinvested and included in the value of the Dean Witter account."

We do not interpret this statement as a finding because it was included in the court's specific reasons for not determining whether the account was property that was distributed at the time of the dissolution.

sensitive resolutions." *Smith* v. *Smith*, supra, 249 Conn. 284–85. Our decision today does not mandate that the court modify alimony in all cases where a party has realized a capital gain, but merely to consider the gain as part of its inquiry. In the event that the gain constitutes a substantial change in circumstances, the laws of this state compel the court to modify the existing alimony order. The court should be mindful of the transitory nature of capital gains and careful not to eliminate completely the payment of alimony is cases such as this.

The judgment is reversed and this case is remanded for further proceedings to determine whether the assets generating the plaintiff's capital gains were acquired prior to or subsequent to the divorce.

In this opinion FLYNN, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the resolution of this case because I do not agree with the majority's conclusion that capital gains may properly be considered as income under some circumstances for the purposes of modification. At the outset, the majority states that the resolution of this issue requires an examination of General Statutes §§ 46b-82 and 46b-81 because capital gain is income derived from the sale of property. I do not believe that §§ 46b-81 and 46b-82 are the only sources of authority that we may rely on to answer this question. Those provisions concern the assignment of property and alimony at the time of dissolution. The majority concludes that they do not answer the question that is presently before us. The majority next looks to the ordinary meaning of the word "income" and determines that capital gain is income based on various dictionary and code definitions of "income," "capital gain" and "gross income." I am not persuaded.

Although the issue of whether capital gain constitutes income for purposes of modification apparently has not

been decided by this court or our Supreme Court, I conclude that capital gain, however generated, is not properly considered as income. With regard to capital gain generated by an asset distributed in the dissolution, I conclude that such gain is not income. I reach this conclusion on the basis of an analogous line of cases that hold that the profit recovered by conversion of a noncash asset into cash is not income. See *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 386, 731 A.2d 330 (1999) (principal payments on purchase money mortgage merely an exchange of assets and may not be included in calculation of income); *Denley* v. *Denley*, 38 Conn. App. 349, 353, 661 A.2d 628 (1995) (exchange of stock options for cash does not transform property into income); *Simms* v. *Simms*, 25 Conn. App. 231, 235, 593 A.2d 161 (exchange of bonds for cash was merely exchange of assets, not income), cert. denied, 220 Conn. 911, 597 A.2d 335 (1991).

Although these cases did not decide the precise issue before us, they stand for the proposition that the conversion of an asset from one form into another does not constitute income. I conclude, as is consistent with the rationale of these cases, that capital gain from the sale of assets acquired at dissolution is nothing more than a conversion of noncash assets to cash and should not be included in income for purposes of modification.

I also conclude that capital gain generated from an asset acquired subsequent to the dissolution is not income. While it is true that in this latter situation the asset was acquired after the dissolution, I reach this conclusion by further analogy to the principles cited previously. As our case law makes clear, a conversion of an asset from one form to another does not constitute the creation of income. Implicit in this conclusion is the underlying concept that the growth in value of the asset distributed at dissolution is not income when it is converted to another form. Rather, the growth, and

resulting cash value when converted, simply represents the accrual in value of that asset itself. In other words, the category the item falls into, namely, either "capital asset" or "income," does not change because the asset has appreciated in value and then is converted as a matter of form.

I do not believe that this principle becomes any less applicable when considering assets acquired after a dissolution. I do not believe, therefore, that the exchange of a capital asset, whenever acquired, for cash transforms that asset into income. Guided by the case law, I conclude that the appreciation of a capital asset acquired after dissolution, and its conversion in form, merely adds to the asset and represents the accrual of value in the asset itself. The category of the item does not change from capital asset to income because there has been an appreciation and conversion.

On the basis of this conclusion, I note that while I do not agree that the capital gain is income, I do agree with the majority that the appreciation of assets acquired after dissolution may properly be considered as assets of a party's estate in the court's determination of whether a modification is appropriate, whether or not the asset has been converted into a different form. See *Clark* v. *Clark*, 66 Conn. App. 657, 665, 785 A.2d 1162 (same § 46b-82 criteria are relevant in deciding whether decree may be modified as are relevant in making initial award of alimony), cert. denied, 259 Conn. 901, 789 A.2d 990 (2001). I also note that in my opinion the majority's conclusion creates the potential for radically underinflated or overinflated modifications because of the frequent fluctuations in the value of capital assets.

In the present case, the defendant asserted a change in circumstances based on a change in the plaintiff's relative income status and assets. In ruling on the defendant's motion, the trial court improperly considered the

plaintiff's capital gains as income. While both income status and assets, or capital gains from the assets, properly may have been taken into consideration by the court, each must be assessed individually. For the foregoing reasons, I respectfully disagree with the majority. I would reverse the judgment and remand the case for a new trial with direction to the court to consider the assets acquired after dissolution separately from its consideration of income.