[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S MOTION TO REOPEN AND MODIFY JUDGMENT, DATED OCTOBER 11, 2002
By way of background, on January 16, 1998 the plaintiff and the defendant entered into a lengthy written agreement which settled and resolved all of their issues by reason of their action to dissolve their marriage. Subsequently, judgment was entered and pursuant to the orders of the court, the terms of the parties' written agreement was adopted as the orders of the court by Austin, J. At the time of the entry of the decree, in accordance with the terms and conditions of the agreement, child support was ordered in the amount of $234.00 per week for two minor children. Subsequently, upon the oldest child Natalie Bourassa attaining her majority, the defendant's payment for support was reduced to $131.00 per week; this as to the still minor child, Edmond Bourassa.
The defendant, in his motion of October 11, 2002, represents that the defendant's income has changed substantially in that he has been laid off from his employment and his severance pay and unemployment benefits have now run out.
As a result of the claimed substantial decrease in the defendant's income, the request of the court is that the order of support be modified, as well as the amount of the alimony due and payable at this time.
In pertinent part, the separation and property distribution agreement, dated January 16, 1998, as concerns those issues presently before the court, were to the following effect. On page 2, category 3, of said agreement: "Defendant shall pay to the plaintiff child support pursuant to the Child Support Guidelines for the support of the two then minor children. Said amount at the time of dissolution is deemed to be $234.00 per week based upon the financial affidavits as filed by the parties at the time of dissolution." As to the issue of alimony as set forth in that agreement, page 4, category 8, the agreement read as follows: "The CT Page 1073 defendant shall pay to the plaintiff the sum of $60.00 per week as periodic alimony until November 30, 1999. Thereafter, alimony shall be paid at the rate of $110.00 per week until March 30, 2004. Thereafter, alimony shall be paid at the rate of $150.00 per week until December 31, 2008 at which time alimony shall terminate." The remaining paragraph in category 8 is not in issue at the moment.
At the time that the court accepted the agreement and entered an order of dissolution of the marital union, the parties filed financial affidavits. Insofar as the plaintiffs financial affidavit is concerned, it provided gross weekly wages from her employment with the Marlborough Board of Education, $442.00; deductions, $153.00 for a net of $289.00. In addition, the affidavit reflected the then order of alimony, $75.00 a week; child support of $218.00 for a total net weekly income of $582.00.
The defendant's financial affidavit as concerns income was to the following effect on that same date, January 16, 1998; occupation, Senior Technical Analyst at United Healthcare, Inc.; gross weekly wage, $994.00; deductions, $292.00; net, $702.00.
On January 14, 2003 the plaintiff and the defendant with their respective attorneys appeared before the court as concerns the defendant's motion to reopen and modify judgment and the matter was heard to a conclusion.
The court makes the following findings of fact.
At the time that the decree of dissolution was entered, the defendant was employed and had been employed with his employer, United Healthcare, Inc., for a period of 23 years. As best the defendant could recall, his earnings at that time were in the approximate area of $50,000.00 a year.
The defendant's employment with United Healthcare, Inc., was terminated on July 1, 2001. The defendant testified that he did not get any advance notice of being discharged where he had been in a specialized category as a computer planner. This type of computer skill had to do with large scale computer programs. The defendant is now age 53. He was age 51 when his employment with United Healthcare was terminated.
The defendant has an associate's degree in computer planning and science and the defendant's skill in the computer area was apparently particularly narrowly focused.
The defendant's testimony was to the effect that his position was being eliminated and his termination was not as a result of any action or fault CT Page 1074 on his part. The defendant at the time of termination received severance benefits amounting to six months worth of compensation. This benefit ended in 2001. The defendant indicated that there were no other lump sum payments. The defendant has also had the benefit of six months of unemployment compensation.
At the time of the dissolution, there were two minor children. The child Edmond will be 17 in just a few days. The daughter has attained majority and on that occurrence the defendant's support dropped to $131.00 a week.
The defendant represents that he has sought other areas of employment but has been unsuccessful. The defendant testified as to following a variety of employment leads, was interviewed twice at Traveler's Insurance Company and in October of 2001 the defendant determined that he would try for any type of position; the same would not have to be within the confines of his specialty. The defendant, in due course, settled on a career in real estate.
After the dissolution, the defendant remarried in March of 2001. The defendant's present spouse's first name is Carolyn. The defendant's spouse is employed.
At the time that the defendant and his present wife undertook the purchase of a new home, the defendant was not aware of the imminent prospect of his losing his position with United Healthcare and even when he received that notice, he was confident that he could secure other work.
The defendant has gone into the area of real estate sales full time in order, in his words, to be able to continue meaningful employment and to a later point of life.
The defendant has become a licensed realtor, he passed the requisite state and real estate board tests and is presently associated with Prudential of Connecticut and has been since March of 2002. The defendant's title is that of a sales associate. His compensation is predicated on a commission basis. The defendant's status is in the category of being an independent contractor and he receives a percentage of commissions that may be earned with regard to the sale of real property.
In order to keep the ship afloat financially, the defendant represents that he has been obliged to obtain loans from his present spouse. The defendant represented that at least through November 4, 2002 that he has CT Page 1075 been current with regard to the outstanding orders of the court.
The defendant testified that in 2002 he earned $7,900.00 in gross sales commissions. His average income was represented as $148.00 a week. The defendant is in hopes that as he builds up a client base that he will do better in the future.
The defendant works on a full-time basis for Prudential of Connecticut and puts in approximately 60 hours a week. He is in the Glastonbury office of that firm.
The defendant has to pay for his own expenses as concerns an automobile, fuel, fliers, mailers and matters of like nature incident to the work that he does.
The defendant paid Prudential $750.00 as a fee incident to the association.
The testimony was to the effect by the defendant that his present wife's employment contract has recently ended and the new position that she assumed will expire as of this current week.
Since the November 4, 2002 date, the defendant on his own decision has paid support in the amount of $50.00 a week and has not been paying the alimony order.
As indicated, the defendant's termination from United Healthcare was precisely on July 6, 2001 and on reflection, the defendant indicated that his annual compensation prior to his being terminated from United Healthcare may have been as much as $59,000.00 a year, plus at the time of his severance from United Healthcare, the defendant received a $1,000.00 bonus, $3,100.00 in vacation pay and some stock options were sold. The extent or number thereof and the amount received was not made available to the court. In 2001 the defendant filed a tax return as married but filing separately.
The existing mortgage of the defendant and his current wife Carolyn is with Sovereign Bank. Apparently, the defendant is one of the owners of record of the new residence but did not sign both the mortgage deed and note. The defendant's testimony was to the effect that his present wife has been paying the mortgage and utilities and that his present spouse is supporting him and gives him as much as $2,000.00 to $2,400.00 monthly.
Prior to the present turn of events, the defendant's present spouse, Carolyn Bourassa, allegedly earned $100,000.00+ annually. CT Page 1076
As indicated, since embarking on the career as being a real estate sales person, the defendant has concentrated solely on that area and has not looked into other areas of employment. In 2002, according to his testimony, the defendant has received the sum of $3,000.00 as a result of a commission on one sale. The defendant is presently engaged in showing properties.
The daughter of the parties is presently in college. The defendant testified that he contributes $100.00 monthly to the adult daughter plus helps with regard to her being able to purchase books and material necessary for her work at Muhlenberg College. It was indicated that the child's tuition at Muhlenberg is approximately $20,000.00.
The defendant, as indicated, is presently age 53. He describes his health as good.
The child Natalee is presently age 21 and a senior at Muhlenberg College. The testimony was to the effect that the daughter Natalee hopes to graduate in June of 2003 with a degree in theater arts. The child Edmond will be 17 in February of 2003. It was indicated that he is in good health and is a junior at Bacon Academy High School.
On November 4, 2002, the parties with counsel were in attendance at court but because of the press of other calendar matters, the matter was not heard.
Counsel agreed that as of November 4, 2002 that the defendant was current as to all outstanding orders at that time.
As concerns the defendant's 401K reflected on his current financial affidavit, the defendant's position was to the effect that the same would not be available to him until he attained age 59-1/2; early withdrawal would be with the consequence of a 10% penalty.
The plaintiff Lucinda Bourassa is still employed by the Marlborough Board of Education. Her income now is somewhat greater; to wit, $769.00 a week. Her hours have been increased so that she now works 37-1/2 hours a week.
The children of the plaintiff and the defendant reside with the plaintiff. Edmond, is there all the time and Natalee is there when she returns from college.
The testimony by the plaintiff was to the effect that the cost of the CT Page 1077 daughter's college education on an annual basis is $29,500.00; that the plaintiff has been paying $4,000.00 annually toward that cost; that the difference has been paid as a result of grants, academic achievement and obligations that have been undertaken directly by the daughter Natalee as concerns the balance required.
The plaintiffs position with Marlborough Board of Education has existed since January of 1989.
The plaintiff, in addition to being a high school graduate, has taken some additional educational courses. The plaintiffs income is apparently based on an hourly status and is not pursuant to a contract. The plaintiff's age is 50. She characterized her health as good.
From the financial affidavits presented to the court, as of January 14, 2003, the court finds that the plaintiff is employed by the Marlborough Board of Education as a bookkeeper.
Her gross weekly income is $769.00; deductions, $270.00. The deductions consist of withholding, FICA, state tax, medicare, a pension plan, 403B and medical expenses. The affidavit reflects the outstanding order of alimony now in the amount of $110.00 a week and child support in the amount of $131.00. Total net weekly income, $740.00. Total weekly expenses, $837.00. Plaintiffs debt, $1,250.00 Visa. The plaintiffs present residence is at 211 Deerfield Terrace, Colchester. The property is valued at $135,000.00; mortgage, $94,100.00; equity, $40,900.00. A 2002 Nissan Maxima valued at $20,000.00 free and clear. Miscellaneous household furnishings, furniture, etc., $3,000.00; bank accounts, Liberty Bank, First New England Credit Union, two accounts, a total of $15,400.00. No stocks or bonds. No cash value to any life insurance. Deferred compensation totaling $36,900.00 consisting of a 403B equitable life, 403B Traveler's-Copeland, a rollover IRA and a UHC 401K QDRO. Total cash value of the plaintiffs assets, $116,200.00. Total liabilities, $1,250.00.
From the defendant's financial affidavit, his occupation is that of a real estate agent with Prudential Connecticut Realty. Gross weekly wage based upon the commission that he last received, $148.00; deductions, $21.00; net weekly wage, $127.00. Weekly expenses, $1,092.00. Debts, $24,600.00 of which the same consists First USA credit card, $7,600.00 and a personal loan from his present spouse of $17,000.00. The home in which the defendant resides with his present spouse is 573 Chimney Sweep Hill Road, Glastonbury valued at $300,000.00; mortgage, $281,188.00 for an equity of $4,906.00. While the testimony was to the effect that the title to that property is in joint names, there is some confusion as to CT Page 1078 which documents the defendant actually signed as concerns the mortgage to Sovereign Bank. A 2001 Dodge motor vehicle valued at $12,000.00; loan balance, $11,500.00; $500.00 equity. A 1986 Honda motorcycle valued at $1,200.00. Miscellaneous home furnishings, $2,800.00. $2,566.00 in the bank and $102,700.00 in deferred compensation plans consisting of Advest IRA $7,700.00 and United Health Group 401K plan, $95,000.00.
On the basis of the testimony elicited at the hearing, it appears that the defendant has not made any alimony payments since November 4, 2002 and has unilaterally reduced the support payments to $50.00 a week. The amount of alimony then due presently would be $1,100.00 and support of $810.00 for a total of $1,910.00.
 Discussion
The questions presented to the court as concerns the instant motion are of the following nature. Should the defendant have continued seeking employment in his field of expertise or in the alternative employment in any other field where the compensation and earnings were at least somewhat commensurate with his prior earnings? Was embarking on a career in real estate, which caused such a dramatic change in finances, justified? Mindful of the defendant's obligations to his remaining minor child and the overall relatively modest alimony payment, was the defendant entitled to undertake such a dramatic change of course as to earned income? Does the defendant have the luxury of embarking upon a totally new line of economic endeavor in real estate where apparently years might be required before any even modest financial success might be achieved. It would appear that other opportunities and other fields, even far outside computer specialties might be available where the defendant's drastic drop in earned income would not be so dramatic. The one remaining child cannot wait until the defendant becomes successful years from now as a result of a build up of the defendant's client base nor should the plaintiff be denied the relatively modest alimony payment which terminates in 2008.
Manifestly it would appear that there has been a change in circumstances insofar as the defendant's present income is concerned. Apparently through no fault of his own, he was terminated by his former employment and has been unable to find work of a similar nature in his specialty field. It would appear that the defendant's present wife has been in effect materially assisting the defendant with regard to loaning or giving him sums of money in order that he might endeavor to comply with the orders of the court, at least through November 4, 2002.
As noted, the child Natalee Bourassa is now emancipated and an adult CT Page 1079 and fortunately. is coming to the end of her educational endeavors; at least as far as a college degree is concerned in June of this year.
The issue as to support for the younger child Edmond, there being no written agreement as concerns post-high school education, will last for only approximately one more year.
It would appear, based upon the defendant's present financial affidavit, that the only two assets of consequence would be the Advest IRA of $7,700.00 and the United Health Group 401K plan of $95,000.00, which were assets of the defendant at the time of the dissolution on January 16, 1998.
 The Law
The general proposition behind modifying a child support payment is that the trial court must find a substantial change in circumstances in accordance with Connecticut General Statutes § 46b-86. Citing Santorov. Santoro, 70 Conn. App. 212 (2002) quoting, "The party seeking modification bears the burden of showing the existence of a substantial change in circumstances." See also Prial v. Prial, 67 Conn. App. 7
(2001). See also Morris v. Morris, 262 Conn. 299 (2003) in which matter the court compared the financial affidavits of each party from the original decree and the present motion for determining whether or not a substantial change in circumstances allowing for an increase in child support had occurred. Any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the Child Support Guidelines; reference being made to Connecticut General Statutes § 46b-86 (a). See also Shearn v. Shearn, 50 Conn. App. 255 (1998) for the proposition that the party seeking modification bears the burden of showing the existence of a substantial change. See also Turner v. Turner,219 Conn. 703 (1991). See also Hardisty v. Hardisty, 183 Conn. 253 (1981).
On the basis of the child support guidelines presented to the court at the time of hearing, it would appear that the recommended current support order would be in the amount of $13.00 a week and the unreimbursed medical expense percentage allocations would be 84% to the mother and 16% to the father.
When determining whether there is a substantial change in circumstances, the court is limited in its consideration to conditions CT Page 1080 arising subsequent to the entry of the dissolution decree. See Schorschv. Schorsch, 53 Conn. App. 378 (1999).
"The court does not have continuing jurisdiction over property distributed at the time of dissolution; C.G.S. § 46b-86." See Gayvs. Gay, 70 Conn. App. 772 (2002).
The defendant must consider other viable avenues of employment of whatever nature.
Certainly to go from income while at United Health of $59,000.00 annually to $148.00 a week in real estate would suggest that other avenues of income must be addressed.
 Orders of the Court
The court respectfully denies the motion to reopen and modify judgment dated October 11, 2002. The direction taken by the defendant with regard to a new field of endeavor, no matter how well intentioned, is so drastic as to impose upon the remaining minor child and the former wife a burden and obligation which is not justified. While the defendant's intentions may be laudable as concerns a long-term new line of making one's livelihood, the child and the former spouse are not realistically in a position where they can await success to be attended to his efforts in that arena.
The court does not address whether or not under appropriate circumstances, resort might be had to assets belonging to the defendant which were the subject of the agreement at the time of the dissolution on January 16, 1998.
___________________ Austin, J. CT Page 1081