[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION ON DEFENDANT'S POSTJUDGMENT MOTION OF MODIFICATION
On November 1, 2002, the defendant obtained an order to show cause for a hearing on December 5, 2002, of his motion for modification. Attached to the motion is the defendant's sworn financial affidavit of October 9, 2002.
This matter was previously before this court in February 2002 on defendant's Motion for Modification, and the court filed its Memorandum of Decision on that motion on April 26, 2002. The court found a substantial change in the defendant's financial circumstances at that time and reduced an unallocated alimony and support order from $7,000 per month to $4,000 per month. That modification was ordered effective October 2, 2001. In less than six months from the date of the court's memorandum, the defendant again seeks modification.
This motion, as before, is filed pursuant to the provisions of §46b-86 (a) of the General Statutes. The movant must prove a substantial change in circumstances in either his or her circumstances. Defendant's claim of changed circumstances is measured by the period from this court's modification and today's date. Theonnes v. Theonnes, 181 Conn. 111,114 (1980); Borkowski v. Borkowski, 228 Conn. 729 (1994); Pearl v.Pearl, 43 Conn. App. 541, 544 (1996).
The history of this case has been fully set forth in the court's Memorandum of Decision of April 25, 2002. As previously noted, there are three children issue of the marriage, two of whom are still minors, Connor who is now 15 and Grady who is now 12. The order for unallocated alimony and support, unless earlier terminating as provided in the parties' agreement, terminates July 1, 2008.
At the time of the court's last modification, the plaintiff was employed as a nursery school teacher in the Westport-Weston school system and was earning $184 per week after income tax withholding. Today she CT Page 2902 continues in that employment. Her net earnings, however, have increased to $320 per week. Her liabilities have decreased from $19,520 to $6,500, her assets have increased from $880,500 to $1,014,500, an increase of $133,948. However, the increase in assets is due primarily to an increase in the value of her home of $108,000. Her weekly expenses have decreased from $1,960 to $1,911 per week. The defendant's net income at the time of the last modification was $280 per month. His net earnings at present are $210 per month. However, this does not include earnings as a real estate salesperson realized during the last quarter of 2002. In May he took a five-week course to become a real estate salesperson with Remax of Milford. During the last thirteen weeks of 2002 he earned $5,000 in commissions. From this must be deducted his expenses and income tax withholding. His net income would, nevertheless, be greater than before. His monthly expenses in February 2002 were $12,568. He shows monthly expenses at present only $300 per month less and that is because there is no longer an expense for public transportation to New York City. His liabilities have increased from $89,000 to $153,000 due entirely to an increase in his tax liability for 1999 and 2000. This increase primarily is the result of interest and penalties. His assets have decreased from $651,000 to $511,000, a decrease of $140,000.
The defendant has paid the arrearage payment of $25,000 and $7,500 in attorneys fees ordered by the court in April 2002. In addition, he has been paying the $1,250 per month towards the arrearage as ordered. These payments account for approximately $40,000 of this decrease. Additionally, the defendant had counsel fees of his own to pay. Also accounting for part of the asset depletion is the defendant's failure to decrease his own monthly expenses. In the summer of 2002 he took his three sons to the New Jersey shore for seven or eight days and at Christmas on a skiing vacation in Vermont for five days.
The plaintiff has had to sell a $30,000 State Municipal Bond by reason of the reduction in the alimony and support. She continues to have $130,000 worth of bonds. Her expenses presently exceed her income by $620 per week.
The question then is whether or not there has been a substantial change in the circumstances of either party. The weekly net income of the plaintiff has increased and the value of her assets have increased. The defendant's liability to the Internal Revenue Service has increased. His assets have diminished by reason of the alimony and arrearage payments to the plaintiff and his own monthly expenses which continue at the same rate as before.
The defendant's greatly reduced income continues. Since there have been CT Page 2903 no job opportunities for him on Wall Street, he has changed his field of employment and is now a real estate salesperson.
All of the foregoing taken together constitutes a substantial change in the financial circumstances of each of the parties. The court finds a substantial change. The court finds further that the order for unallocated alimony and support should be modified once again. As the court previously noted, it has the duty to change its orders so that those economically at risk are given protection. Sweet v. Sweet,190 Conn. 657 (1983); Cabrera v. Cabreara, 23 Conn. App. 330 (1990). The plaintiff and the two children residing with her are economically at risk.
While the court recognizes that alimony and support may be paid from assets, the defendant has done so for fifteen months (September 21, 2001, to the present). See Graham v. Graham, 25 Conn. App. 41, cert. denied 220 Conn. 903 (1991). As the defendant has argued, this cannot go on indefinitely. It will, however, continue until the defendant realizes sufficient income from his commissions on sales of real estate and until he reduces his monthly expenses. The court modifies its previous order and reduces the order for unallocated alimony and support from $4,000 per month to $3,500 per month effective January 1, 2003. All other provisions of the judgment of March 9, 1994, continue in full force and effect including the provisions of paragraph 4.9 of the agreement. The previous order for payment on the arrearage of $1,250 per month continues in full force and effect.
 ARREARAGE
The defendant has challenged the court's computation of arrearage in its Memorandum of April 25, 2002. At that time, the court found an arrearage of $42,683.60. Of this amount, $33,683.60 was found for the defendant's failure to pay excess earnings in the years 1996, 1997, and 2000. It is the defendant's claim that capital gains income should not have been included in this computation and cites the case of Gay v. Gay,70 Conn. App. 772, 780.
There are a number of reasons why the defendant's challenge to this computation cannot succeed. First, the court's judgment was entered on April 26, 2002. No motion was addressed to the court within the four-month period following April 26. No appeal from this court's judgment was taken so that judgment is a final judgment. Second, the Gay case was decided July 9, 2002. It is noted by Judge Mihalakos in his decision: "This case presents an issue of first impression before this court." (Emphasis supplied.) The Gay decision enunciates the law as of July 2002. There is CT Page 2904 no case law that says this decision should be applied retroactively. Third, the decision in the case at bar involved the interpretation of the term "gross income" in the separation agreement and the inclusion of capital gains income in that term. This was not the issue in the Gay
case. Fourth, no evidence was offered to identify the assets sold by the defendant that produced capital gains income and whether those assets were part of the assets retained by him at the time of the dissolution. The defendant was a securities trader, a broker-dealer in New York City. It is entirely probable that the capital gain income realized was upon the sale of assets not held at the time of dissolution in which case such income would be included. This issue was not raised, briefed or argued at the time of trial.
The court's determination of the arrearage stands as previously determined.
 EDGAR W. BASSICK, III JUDGE TRIAL REFEREE
CT Page 2905
[EDITORS' NOTE: This page is blank.] CT Page 2905-a