DONNA SIMMS *v.* ROBERT SIMMS
(SC 17712)

Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued March 15—officially released August 14, 2007

*Kenneth J. Bartschi*, with whom were *Brendon P. Levesque* and, on the brief, *Karen L. Dowd*, for the appellant (plaintiff).

*Samuel V. Schoonmaker IV*, with whom, on the brief, were *Samuel V. Schoonmaker III*, *Peter M. Bryniczka* and *Aidan R. Burgers*, for the appellee (defendant).

*Opinion*

VERTEFEUILLE, J. The dispositive issue in this appeal[1] is whether the trial court abused its discretion in reducing the alimony that the defendant, Robert Simms, is obligated to pay to the plaintiff, Donna Simms, from $78,000 to $1 per year after finding a substantial change in circumstances pursuant to General Statutes § 46b-86.[2] We conclude that the trial court abused its discretion and, accordingly, we reverse the judgment of the trial court.

The record reveals the following facts and procedural history. The plaintiff and the defendant were married in 1961 and the marriage was dissolved by order of the court in 1979. The judgment of dissolution required the defendant to make periodic alimony and child support payments to the plaintiff. In 1989, the plaintiff filed a motion for modification to increase the alimony award

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

[2] General Statutes § 46b-86 (a) provides in relevant part: "Unless and to the extent that the decree precludes modification, the court may order either party to maintain life insurance for the other party or a minor child of the parties or any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party . . . ."

and the defendant filed a motion to decrease or terminate his alimony obligation. The trial court denied both motions. The plaintiff appealed to the Appellate Court, which affirmed the trial court's judgment. See *Simms* v. *Simms*, 25 Conn. App. 231, 235, 593 A.2d 161, cert. denied, 220 Conn. 911, 597 A.2d 335 (1991).

In August, 1998, the plaintiff again filed a motion for modification of the alimony award and the defendant responded by filing a motion to terminate his alimony obligation. The plaintiff's motion was dismissed, however, she was permitted to amend her motion for modification. She subsequently filed another motion for modification, which eventually was argued before the court in late 2002. On February 25, 2003, the trial court, *Hon. Dennis F. Harrigan*, judge trial referee, issued a memorandum of decision in which he found that the defendant's income had increased from $4450 per month in 1979 to $14,880.14 per month in 2002. The court concluded that "this dramatic increase in salary is an unanticipated substantial change in the defendant's financial circumstances." Accordingly, the court granted the plaintiff's motion and modified the defendant's alimony obligation upward to $1500 per week, or $78,000 per year, retroactive to August 18, 1998. This order resulted in an arrearage,[3] which the court ordered the defendant to pay at the rate of $500 per week until it was paid off. The defendant appealed from the judgment to the Appellate Court and that court affirmed the judgment. See *Simms* v. *Simms*, 89 Conn. App. 158, 164, 872 A.2d 920 (2005).

The defendant again filed a motion to modify his alimony obligation downward, which motion was dated June 4, 2003. He argued that "[t]here has been a substan-

[3] In October, 2005, at the time of the defendant's latest motion for modification, the trial court noted that the plaintiff claimed that the value of this arrearage was $122,000 and the defendant claimed that it was $96,000. The reason for this discrepancy is not clear.

tial change in [his] financial circumstances in that his income from employment and all other sources has declined substantially." On December 12, 2003, Judge Harrigan denied the motion.

On November 29, 2004, the defendant yet again filed a motion to modify his alimony obligation contending that there had been a substantial change in his financial circumstances because he had retired. Thereafter, in April, 2005, he filed an amended motion to modify in which he contended that the deterioration of his health as the result of depression and heart disease also constituted a substantial change of circumstances justifying the modification or termination of his alimony obligation. The trial court, *Tierney, J.*, held a hearing on the motion on May 16, 2005, and June 30, 2005. At the hearing, the defendant testified that he was sixty-seven years old, that he suffered from depression, manifested by intense headaches, lack of energy and the inability to get out of bed, that he recently had suffered two heart attacks and that he needed knee replacement surgery on both knees. He further testified that, since Judge Harrigan's February, 2003 ruling granting the plaintiff's motion for modification, he had retired from his position as chief executive officer of Simms Capital Management and had no current income from employment. His sole current income was $1640 per month in social security benefits.[4] The defendant presented evidence that he had sold his entire interest in Simms Capital Management, including stocks for $468,571, plus $400,000 to be paid in installments. The defendant's current expenses were $18,422.67 per month, including $8666.67 in alimony and arrearage payments to the plaintiff. He paid these expenses primarily by borrowing against his residence. The evidence presented at the

---

[4] The trial court found that "[t]he defendant still continues to receive interest from investments," but that there was no evidence establishing the amount of that income.

hearings also established that the value of the defendant's assets less the value of his liabilities was $4,092,720 at the time of Judge Harrigan's February, 2003 ruling and currently was $2,806,338.

On the basis of this evidence, the trial court concluded that the defendant had met his burden of proving a substantial change of circumstances within the meaning of § 46b-86. The court then considered the criteria set forth in General Statutes § 46b-82[5] for modifying the amount of the defendant's alimony obligation. The court found that the plaintiff was sixty-eight years old, was receiving medication for thyroid and breast cancer and had suffered a stroke. She was employed as a counselor and therapist at Greenwich Hospital and earned $1625 per month. In addition she received $797 per month in social security benefits and investment income of approximately $250 per month. She owned an individual retirement account valued at $6000, stocks and bank accounts valued at $78,215 and a residence valued at $695,000.

The court concluded that modification of Judge Harrigan's February, 2003 order was warranted and reduced the defendant's alimony obligation from $1500 per week to $1 per year. In support of this conclusion, the court noted that the defendant was sixty-seven years old, that he had paid alimony for twenty-six years, that his health had deteriorated substantially since 2002, that he had sold his entire interest in the primary source of his

---

[5] General Statutes § 46b-82 (a) provides in relevant part: "In determining whether alimony shall be awarded, and the duration and amount of the award, the court shall hear the witnesses, if any, of each party, except as provided in subsection (a) of section 46b-51, shall consider the length of the marriage, the causes for the annulment, dissolution of the marriage or legal separation, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81, and, in the case of a parent to whom the custody of minor children has been awarded, the desirability of such parent's securing employment."

income, that he was unemployed and his sole current income was $1640 in social security benefits, and that he was required to "invade assets" to pay his living expenses. The court also stated that it could not "consider in this modification motion the parties' current assets except as they related to the production of income or their capability of income production."

The plaintiff then filed this appeal. Thereafter, the defendant filed a motion for articulation in which he asked the trial court to clarify whether it had considered the value of the parties' current assets in reaching its determination. The court granted the motion and issued an articulation in which it stated that it had not considered the value of the parties' assets for the purpose of determining whether there had been a substantial change in circumstances pursuant to § 46b-86 because it had made that determination on other grounds. The court also stated, however, that it had "analyz[ed] each of the assets of the parties" in determining the amount of the modification pursuant to § 46b-82. The court indicated that, because it had no authority to modify the division of the parties' assets after the initial dissolution judgment or to order that alimony be paid out of assets, it had limited its consideration of the parties' assets to whether they were capable of producing income.[6] The court noted that there was no evidence that any of the defendant's assets were income producing.

The plaintiff then filed a motion for review in the Appellate Court in which it asked that court to vacate

[6] The court stated that it had "not limit[ed] its [consideration] of the assets of the parties to those that could or actually do produce income." If this statement is read in context, however, it is clear that the court meant that it had considered all of the criteria set forth in § 46b-82, including whether the parties' assets produced income. Having concluded that the evidence was insufficient to prove that the defendant's assets produced income, however, the court did not take the value of the assets into account in crafting the modification order.

the trial court's memorandum of decision on the motion for articulation and to reverse the trial court's order granting the motion. The plaintiff argued that the trial court improperly had used the articulation to change its rationale for granting the defendant's motion for modification of alimony. The Appellate Court granted the motion for review, but denied the relief requested therein. The plaintiff then filed an amended appeal to which she appended an amended preliminary statement of issues indicating that she intended to challenge the trial court's articulation. Thereafter, she filed a motion for permission to file a corrected amended appeal to clarify that she was appealing from the trial court's articulation. The Appellate Court denied the motion and, sua sponte, struck the portion of the amended preliminary statement of issues indicating that the plaintiff intended to challenge the articulation. The plaintiff then filed a motion for reconsideration en banc, which the Appellate Court denied.

The plaintiff claims on appeal that the trial court improperly: (1) changed the rationale for modifying the defendant's alimony obligation in its articulation; (2) failed to consider the value of the parties' assets in determining the amount of the modification; (3) concluded that there was a substantial change of circumstances; and (4) concluded that the installment payments received from the sale of the defendant's business were not income but a return of capital. The plaintiff further claims that, if we conclude that the trial court properly found a substantial change of circumstances, the trial court's modification of the defendant's alimony obligation from $78,000 to $1 per year was an abuse of discretion. We conclude that the trial court properly concluded that there had been a substantial change of circumstances since Judge Harrigan's order in February, 2003, warranting modification of the defendant's alimony obligation. We further conclude that the

plaintiff's abuse of discretion claim subsumes her second and fourth claims and that the trial court's virtual elimination of the defendant's alimony obligation was an abuse of discretion.[7]

We begin our analysis of the plaintiff's claims by setting forth the standard of review. "The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. . . . As has often been explained, the foundation for this standard is that the trial court is in a clearly advantageous position to assess the personal factors significant to a domestic relations case . . . ." (Citations omitted; internal quotation marks omitted.) *Borkowski* v. *Borkowski*, 228 Conn. 729, 739, 638 A.2d 1060 (1994).

"[Section] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony, the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . Because a request for termination of

---

[7] With respect to the plaintiff's claim that the trial court improperly used the articulation to change the rationale for modifying the defendant's alimony obligation, we note that the Appellate Court struck that claim from the plaintiff's amended preliminary statement of issues. The reason for the court's action is not clear from the record. At oral argument before this court, however, the plaintiff acknowledged that, in the articulation, the trial court had not changed the view expressed in its original memorandum of decision that, in determining whether a modification of alimony was warranted, it could consider the parties' assets only to the extent that they generated income. Accordingly, we conclude that the plaintiff's claim regarding the trial court's rationale is waived and we do not review it.

alimony is, in effect, a request for a modification, this court has treated as identical motions to modify and motions to terminate brought under § 46b-86 (a). . . .

"The traditional purpose of alimony is to meet one's continuing duty to support. . . . Section 46b-86 reflects the legislative judgment that continuing alimony payments should be based on current conditions. . . . Thus, [t]o avoid re-litigation of matters already settled, courts in modification proceedings allow the parties only to present evidence going back to the latest petition for modification. . . . Alimony decrees may only be modified upon proof that relevant circumstances have changed since the original decree was granted. . . . It is, therefore, well established that when a party, pursuant to § 46b-86, seeks a postjudgment modification of a dissolution decree that earlier had been modified, he or she must demonstrate that a substantial change in circumstances has arisen subsequent to the entry of the earlier modification." (Citations omitted; internal quotation marks omitted.) Id., 734–36.

The plaintiff claims that the trial court abused its discretion in finding a substantial change in circumstances for purposes of § 46b-86 because its factual finding that the defendant's health had deteriorated since the time of the last modification was clearly erroneous and the court had failed to consider that the value of the defendant's interest in his residence had increased by $600,000 since that time.[8] She further

---

[8] In *Borkowski* v. *Borkowski*, supra, 228 Conn. 737, this court stated that "[o]nce a trial court determines that there has been a substantial change in the financial circumstances of one of the parties, the same criteria that determine an initial award of alimony . . . are relevant to the question of modification." (Internal quotation marks omitted.) The court then stated that "[b]y so bifurcating the trial court's inquiry, however, we did not mean to suggest that a trial court's determination of whether a substantial change in circumstances has occurred, and its determination to modify alimony, are two completely separate inquiries. Rather, our bifurcation of the trial court's modification inquiry was meant to reflect that, under our statutes

claims that the court improperly found that the defendant had no earning capacity when the evidence established that he voluntarily had retired and he had the ability to work if he so chose. We are not persuaded.

The trial court reasonably could have concluded that the defendant sold his business because of his advancing age and poor health, and not to avoid his obligations to the plaintiff,[9] and that the loss of a continuous stream of income from his business constituted a substantial change in his financial circumstances warranting review of his alimony obligation, regardless of whether the defendant's health had deteriorated significantly or his equity in his residence had increased since 2003. Accordingly, we conclude that the trial court properly found a substantial change in circumstances and entertained the defendant's motion for modification or termination of his alimony obligation.

We next consider whether the trial court abused its discretion in determining the amount by which the defendant's alimony obligation should be reduced as a result of the change in his financial circumstances. The

and cases, modification of alimony can be entertained and premised upon a showing of a substantial change in the circumstances of either party to the original dissolution decree. . . . Thus, once the trial court finds a substantial change in circumstances, it can properly consider a motion for modification of alimony. After the evidence introduced in support of the substantial change in circumstances establishes the threshold predicate for the trial court's ability to entertain a motion for modification, however, it also naturally comes into play in the trial court's structuring of the modification orders." (Citation omitted.) Id. Thus, in the present case, the plaintiff's claim that the trial court improperly found a substantial change in circumstances implicates *both* the threshold question of whether the trial court should have entertained the defendant's motion for modification *and* the question of whether the trial court properly determined the amount of the modification.

[9] Indeed, the plaintiff does not appear to contend that the defendant sold the business for the purpose of avoiding his obligations to her, but contends only that it would be *possible* for the defendant to work if he so chose. The plaintiff provides no authority for the proposition that the trial court must impute income to a party of reasonable retirement age and in declining health for purposes of § 46b-86 if the party has any ability to work, however limited.

plaintiff contends that the trial court improperly: (1) concluded that it could not consider the value of the parties' nonincome producing assets; (2) concluded that the installment payments for the sale of the defendant's business were return on capital and not consideration for future income; (3) failed to consider that the defendant had paid off the mortgage on his residence with the proceeds from the sale of his business and then borrowed against his residence to meet monthly expenses; (4) failed to consider that the defendant was still capable of working; and (5) failed to consider the plaintiff's health and financial situation. We conclude that, under the totality of the circumstances, the trial court abused its discretion in reducing the defendant's alimony obligation from $78,000 to $1 per year.

First, we agree with the plaintiff that the trial court improperly concluded that it could not consider the value of the parties' nonincome producing assets in determining the amount by which the defendant's alimony obligation should be modified.[10] The trial court correctly noted that it had no authority to modify the division of the parties' property after the original dissolution judgment; see *Simmons* v. *Simmons*, 244 Conn. 158, 183–84, 708 A.2d 949 (1998); or to order the defendant to sell his assets to satisfy his alimony obligation. That does not mean, however, that the court had no authority to consider the value of the parties' assets in determining the amount of the modification or, in appropriate circumstances, to order the defendant to pay alimony if doing so may require him to invade his assets. Indeed, the defendant does not dispute that "the trial court was required to consider and give significant

[10] The defendant contends that the trial court repeatedly stated that it had considered *all* of the criteria set forth in § 46b-82 in determining the amount of the modification, which include the value of the parties' estates. Our careful review of the memorandum of decision and articulation persuades us otherwise.

weight to the parties' current assets under . . . § 46b-82," which expressly provides that the trial court "shall consider the . . . estate . . . of the parties . . . ."[11] General Statutes § 46b-82 (a); see *Bartlett* v. *Bartlett*, 220 Conn. 372, 381–82, 599 A.2d 14 (1991) (rejecting claim that trial court was limited to considering liquid assets and income producing assets under § 46b-82 and concluding that court may consider all assets in modifying alimony award "because a contrary rule would encourage parties who acquire substantial amounts of nonliquid assets after the original judgment to insulate themselves from paying more alimony, despite their increased wealth, by simply delaying the liquidation of those assets").[12] Accordingly, we conclude that the trial

---

[11] "In this context, the 'estate' of the parties, as referred to in the [assignment of property] statute, comprehends the aggregate of the property and liabilities of each." *Schmidt* v. *Schmidt*, 180 Conn. 184, 192, 429 A.2d 470 (1980).

[12] The defendant appears to argue that *Schorsch* v. *Schorsch*, 53 Conn. App. 378, 731 A.2d 330 (1999), stands for the proposition that trial courts do not have the authority to issue financial orders that might have the effect of forcing a party to liquidate property allocated to the party in a dissolution proceeding in order to comply with a modified alimony order. In *Schorsch*, the defendant husband had sought a postdissolution modification of his alimony obligation. Id., 380. The issue on appeal was whether the trial court improperly had included in the calculation of the defendant's monthly income certain principal payments that he was receiving pursuant to a purchase money mortgage that he held on real property that had been awarded to him in the dissolution decree. Id., 384. The Appellate Court concluded that the trial court improperly had treated the exchange of an asset for cash as income. Id., 385.

The fact that the exchange of an asset awarded in a dissolution decree for its equivalent value in cash does not constitute income does not mean, however, that a change in the value of an asset awarded at the time of dissolution may not be considered when modifying an alimony award. Any such conclusion would be inconsistent with the holding of *Bartlett* v. *Bartlett*, supra, 220 Conn. 381–82, that a trial court may consider the value of all assets of the parties in determining the amount of a modification. Moreover, if the trial court were not authorized to order a modification that might require an invasion of assets to meet the modified alimony obligation, then the problem that *Bartlett* was intended to address, i.e., the avoidance of alimony obligations by converting liquid assets and income producing property into nonincome producing assets, could not be prevented. Such

court improperly determined that it could not consider the value of the installment payments received by the defendant from the sale of his business because they constituted a return on an investment or the value of the defendant's residence and other assets in determining the amount of the modified alimony obligation.[13] See *State* v. *Campbell*, 225 Conn. 650, 654, 626 A.2d 287 (1993) (clear misconception of governing law is abuse of discretion).

Second, we agree with the plaintiff that the court failed to give due consideration to the evidence concerning her health and financial circumstances. The plaintiff presented evidence that her net monthly income was $7151, including $4800 in net monthly ali-

an order does not necessarily amount to an order requiring the sale or liquidation of the asset because other options, such as the conversion of the asset into an income producing asset or borrowing against the asset, are available.

In the present case, the defendant converted an income producing asset—his business—into cash and used a portion of the cash to pay down debt, including the mortgage on his residence. The trial court considered the *decrease* in the defendant's income as the result of the sale in determining the amount of the modification, but did not consider the resulting *increase* in the value of the defendant's estate. (We recognize that the net value of the defendant's estate decreased between the time of the February, 2003 modification order and Judge Tierney's modification order. This was the result of the defendant's sale of assets to pay joint liabilities of the defendant and his current wife during that period.) Thus, the situation before us is similar to the situation in *Schorsch* v. *Schorsch*, supra, 53 Conn. App. 385, in which the Appellate Court concluded that the trial court improperly had treated the increase in the defendant husband's liquid assets as the result of a sale of real property previously awarded to him in the property division as income without considering the equivalent decrease in the value of the defendant's interest in that real property.

[13] We do not suggest that the trial court must treat the installment payments or the increase in the defendant's equity in his residence as income in determining the amount of the modification. We conclude only that these items constitute financial resources that are available to the defendant and that the court must take them into account. For example, the court may consider the fact that the defendant has met his monthly expenses by borrowing against his residence in evaluating his ability to meet his alimony obligation.

mony payments, and her total monthly living and liability expenses were $7651, including $800 in uninsured prescriptions and $200 in dental work. Thus, in the absence of the alimony payments, the plaintiff's net monthly income would be $2351, even if we were to assume that she would continue to be able to work.[14] The trial court took no note of this discrepancy between the plaintiff's income and her expenses in its memorandum of decision.[15] We are compelled to conclude that this failure to consider the amount and sources of the plaintiff's income and her needs, as required by § 46b-82 (a), constituted an abuse of discretion. Cf. *Casey* v. *Casey*, 82 Conn. App. 378, 385, 844 A.2d 250 (2004) (when evidence established that defendant wife was unable to make monthly mortgage payments on marital residence and that she had not benefited financially from mortgage debt, trial court improperly applied statutory criteria and abused discretion in awarding residence to defendant subject to debt).

We reject the plaintiffs' claim, however, that the trial court abused its discretion by failing to impute income to the defendant on the ground that he is still capable of working. As we have indicated, the trial court reason-

[14] To the extent that the trial court determined that the arrearage payments from the defendant were current income for the plaintiff, we conclude that any such determination would be contrary to the principle that alimony orders are not subject to retroactive modification. See General Statutes § 46b-86 (a) ("[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification"). The arrearage payments were for the period preceding Judge Harrigan's February, 2003 modification order. Treating them as income for a later period would, in effect, retroactively reduce the defendant's alimony obligation pursuant to that modification order.

[15] The defendant points out that the plaintiff's estate increased from $459,784 at the time of the February, 2003 modification order to $874,080 at the time of the subsequent modification, $695,000 of which is in the form of equity in the plaintiff's residence. There was no evidence, however, as to whether, and if so, how, the plaintiff would be able to use those assets to meet her monthly expenses. The defendant may, of course, raise that issue on remand.

ably could have concluded that the defendant's sale of his business and his retirement were appropriate in light of his age and deteriorating health. See footnote 9 of this opinion; see also *Gay* v. *Gay*, 266 Conn. 641, 643, 835 A.2d 1 (2003) (trial court found that "bona fide retirement" was legitimate basis for modifying alimony obligation).

We conclude that, in reducing the defendant's alimony obligation from $78,000 to $1 per year, the trial court improperly focused on the fact that the defendant's monthly income had been reduced from $14,880.14 to $1640, and failed to give proper consideration to the defendant's other financial resources.[16] In addition, although the trial court properly considered the fact that the defendant had retired and was in poor health, it failed to give due weight to the plaintiff's health and financial situation. Accordingly, we conclude that, although the trial court properly determined that there had been a substantial change in circumstances justifying a modification of the defendant's alimony obligation, the trial court abused its discretion in determining the amount of that modification. We recognize that a finding of abuse of discretion in making financial awards in marital dissolution cases is very rare. See *Casey* v. *Casey*, supra, 82 Conn. App. 379. Nevertheless, in light of the extreme nature of the modification order and the trial court's misconception and

[16] The defendant concedes that the trial court gave "significant weight" to the parties' income. He contends, however, that the trial court is not *required* to give consideration to *all* of the criteria set forth in § 46b-82, but has discretion to determine which criteria are relevant to the modification. We agree that the trial court has discretion to determine the weight to give to each of the criteria in light of the specific facts and circumstances of the case before it. In the present case, however, the trial court improperly concluded as a matter of law that it could not consider the value of the parties' nonincome producing assets. Moreover, the court did not explain, and we cannot perceive, why a reduction of the defendant's alimony obligation from $78,000 per year to $1 per year was justified in light of the plaintiff's financial situation.

misapplication of the statutory criteria, we are compelled to conclude that this is one of those rare cases. We therefore remand the case for a new hearing on the defendant's motion for modification or termination of his alimony obligation.

The judgment is reversed and the case is remanded to the trial court for further proceedings according to law.

In this opinion the other justices concurred.