******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom ROBINSON, J., joins, concurring in part and dissenting in part. I join parts II and III of the majority opinion. I do not agree, however, that the trial court applied General Statutes § 46b-66 (c) in the present case, nor do I agree that § 46b-66 (c) applies to an agreement to arbitrate contained in a premarital agreement. Therefore, I do not join part I of the majority opinion.

Preliminarily, I note that a careful reading of the record does not support the assertion of the defendant, Dean W. Lodmell, that the trial court applied § 46b-66 (c) in the present case.[1] Instead, the record reveals that the court, *Malone, J.*, undertook to interpret the premarital agreement, including the arbitration clause. In response to the defendant's motions to stay judicial proceedings and to compel arbitration, and the motion in limine, pendente lite, for a " 'thorough inquiry' " of the arbitration agreement under § 46b-66 (c) filed by the plaintiff, Joan LaFrance, the trial court issued a memorandum of decision on September 2, 2011. In that memorandum of decision, the court observed that the dispute between the plaintiff and the defendant concerned what should be submitted to arbitration. The court stated: "The *contract law* applies to agreements to arbitrate. In the event the parties cannot agree as to the issues to be submitted to the arbitrator, then the court is to make that determination." (Emphasis added.) Nowhere in this one page memorandum of decision does the court cite to § 46b-66 (c), conduct a "thorough inquiry" of the agreement, mention the words "fair and equitable," or explain why it would be unfair or inequitable to arbitrate certain issues. Instead, applying contract law, the court concluded that, pursuant to the premarital agreement, only one matter was in dispute for arbitration, namely, the sale of the marital home.

Further evidence that the trial court's memorandum of decision was based on its interpretation of the premarital agreement, rather than the application of § 46b-66 (c), is the court's affirmative response to the plaintiff's motion for articulation, which asked: "Having found in [relevant] part that . . . the only issue in dispute for arbitration is the sale of the joint asset . . . did the court conclude, *based on its interpretation and construction of this premarital agreement* . . . that the relief fixed, limited, and agreed [on] between these parties did not include damages?" (Citation omitted; emphasis altered; internal quotation marks omitted.) Then, in June, 2012, the defendant filed a motion for an order regarding arbitrability, which, in essence, sought to revisit the trial court's September 2, 2011 determination regarding arbitrability. Counsel for the defendant specifically argued, in light of a then recent

decision from this court, *New Britain* v. *AFSCME, Council 4, Local 1186*, 304 Conn. 639, 43 A.3d 143 (2012), that the arbitrator, and not the court, should determine the issue of arbitrability. During oral argument on that motion, neither party made reference to § 46b-66 (c) or argued that the court should determine whether it is fair and equitable to arbitrate the defendant's additional claims.[2] In an August 8, 2012 memorandum of decision, in which the court denied the defendant's motion for an order regarding arbitrability, the court relied on *New Britain* v. *AFSCME, Council 4, Local 1186*, supra, 647–48, reasoning that "[i]t is well established that, absent the parties' contrary intent, it is the court that has the primary authority to determine whether a particular dispute is arbitrable, not the arbitrators. . . . [W]hen deciding whether a party has agreed that an arbitrator should have the sole authority to decide arbitrability, we must not assume that the parties agreed to arbitrate arbitrability unless there is clea[r] and unmistakabl[e] evidence that they did so." (Internal quotation marks omitted.) The court, yet again, made no reference to § 46b-66 (c) or the "fair and equitable" standard. Thus, I conclude that the trial court never applied § 46b-66 (c) to the parties agreement to arbitrate.[3]

"Generally, because our review is limited to matters in the record, we will not address issues not decided by the trial court." (Internal quotation marks omitted.) *Shelton* v. *Statewide Grievance Committee*, 277 Conn. 99, 106, 890 A.2d 104 (2006). When, however, "an issue is raised in the trial court but the court declines to address it, an appellate court may consider it if the facts are undisputed and the issue is purely a question of law." *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 684, 911 A.2d 300 (2006). Because the applicability of § 46b-66 (c) raises a question of law, it would not be improper to consider that issue in the present case. Nevertheless, we need not consider the defendant's claim that the statute does not apply because, as I have noted, the trial court did not apply § 46b-66 (c).

Although I need not consider whether § 46b-66 (c) applies to arbitration clauses contained in premarital agreements, I do so in response to the majority opinion. The applicability of § 46b-66 (c) raises a question of statutory interpretation over which this court's review is plenary. See, e.g., *State* v. *Smith*, 317 Conn. 338, 346, 118 A.3d 49 (2015). General Statutes § 1-2z provides in relevant part that, when interpreting statutes, we shall first consider "the text of the statute itself and its relationship to other statutes. . . ." Extratextual evidence of legislative intent is considered only if, after attention has been given to the statute's text and relationship with other statutes, we determine that the statute in question is ambiguous or that a literal interpretation would lead to absurd or unworkable results. See General Statutes § 1-2z.

Section 46b-66 (c) provides: "The provisions of chapter 909 [concerning arbitration proceedings] shall be applicable to any agreement to arbitrate in an action for dissolution of marriage under this chapter, provided (1) an arbitration pursuant to such agreement may proceed only after the court has made a thorough inquiry and is satisfied that (A) each party entered into such agreement voluntarily and without coercion, and (B) such agreement is fair and equitable under the circumstances, and (2) such agreement and an arbitration pursuant to such agreement shall not include issues related to child support, visitation and custody. An arbitration award in such action shall be confirmed, modified or vacated in accordance with the provisions of chapter 909." The defendant claims that § 46b-66 (c) applies only to arbitration agreements entered into after a dissolution proceeding has commenced, arguing that the statute's language, "in an action for dissolution of marriage," creates a temporal limitation to the statute's applicability. The plaintiff responds that the statute applies to arbitration clauses contained in premarital agreements, contending that the use of the phrase "in an action for dissolution of marriage" merely distinguishes the type of proceeding the statute applies to, namely, a dissolution action rather than a civil action. In addition, on the basis of the statute's prescription that "an arbitration pursuant to such agreement *may proceed only after* the court has made a thorough inquiry"; (emphasis added) General Statutes § 46b-66 (c) (1); the plaintiff asserts that the statute is triggered by the commencement of arbitration regardless of when the agreement to arbitrate is made. The majority agrees that § 46b-66 (c) applies to arbitration agreements contained in premarital agreements because they "are by definition agreements to arbitrate issues that would only arise once the parties are involved 'in an action for dissolution . . . .'" Part I A of the majority opinion.

The text of § 46b-66 (c) does not support the plaintiff's or the majority's interpretation. The language in § 46b-66 (c) (1), "an arbitration pursuant to [an] agreement [to arbitrate] *may proceed only after* the court has made a thorough inquiry"; (emphasis added); supports a temporal limitation to the application of the statute. If the parties agree to arbitrate after they institute a dissolution action, it makes sense that they would need the court's permission before proceeding to arbitration; after all, the court's jurisdiction has been invoked. On the other hand, if, as part of the premarital agreement, the parties agreed to arbitrate and, upon deciding to divorce, wish to go directly to arbitration, it makes little sense that they would first need to file an action with the Superior Court and seek that court's permission to arbitrate.

Moreover, when the relationship of § 46b-66 (c) to other statutes is considered, only the defendant's read-

ing is probable. Under the circumstances of the present case, there are two statutory schemes that relate to § 46b-66 (c), namely, chapter 909 of the General Statutes, comprising General Statutes §§ 52-408 through 52-424, and relating to arbitration proceedings, and the Connecticut Premarital Agreement Act, General Statutes §§ 46b-36a through 46b-36j.

Section 52-408 provides in relevant part that "an agreement in writing between the parties to a marriage to submit to arbitration any controversy between them with respect to the dissolution of their marriage, except issues related to child support, visitation and custody, *shall be valid, irrevocable and enforceable, except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally.*" (Emphasis added.) The emphasized language conflicts with the reading of § 46b-66 (c) that the plaintiff advocates and the majority adopts. If, as the plaintiff and the majority contend, § 46b-66 (c) applies to all agreements to arbitrate dissolution matters, despite when such agreements are entered into, then the test for enforceability prescribed in § 52-408—general contract defenses—would be completely supplanted by the test set forth in § 46b-66 (c) (1) (B)—fair and equitable. This construction of § 46b-66 (c) would, therefore, render § 52-408 void in part. Stated differently, an agreement to arbitrate that is enforceable under § 52-408 because the party challenging enforcement cannot establish a general contract defense, such as unconscionability, fraud, or duress, nonetheless may be unenforceable under § 46b-66 (c) if a trial court determines that the agreement is not fair and equitable. Conversely, any agreement enforceable under § 46b-66 (c) would also be enforceable under § 52-408 because, I presume, it would not be fair and equitable to enforce an agreement that is unconscionable or a product of fraud or duress. Thus, the majority's construction renders a portion of § 52-408 meaningless.[4]

Well established principles of statutory interpretation, however, do not permit such a construction. First, this court is guided by the presumption that the legislature has enacted a harmonious and consistent body of law, and, accordingly, I must construe § 46b-66 (c) in a manner that ensures coherence within the broader statutory scheme. See, e.g., *Thomas* v. *Dept. of Developmental Services*, 297 Conn. 391, 404, 999 A.2d 682 (2010) ("We are further guided . . . by the presumption that the legislature, in amending or enacting statutes, always [is] presumed to have created a harmonious and consistent body of law . . . . Accordingly, [i]n determining the meaning of a statute . . . we look not only at the provision at issue, but also to the broader statutory scheme to ensure the coherency of our construction." [Citation omitted; internal quotation marks omitted.]); *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) (same). Second, it is a "cardinal

maxim" of statutory interpretation "that statutes shall not be construed to render any sentence, clause, or phrase superfluous or meaningless." (Internal quotation marks omitted.) *Commissioner of Public Safety* v. *Freedom of Information Commission*, 312 Conn. 513, 543, 93 A.3d 1142 (2014); see also *Connecticut Podiatric Medical Assn.* v. *Health Net of Connecticut, Inc.*, 302 Conn. 464, 474, 28 A.3d 958 (2011) ("[I]t is a basic tenet of statutory construction that the legislature [does] not intend to enact meaningless provisions. . . . [I]n construing statutes, we presume that there is a purpose behind every sentence, clause, or phrase used in an act and that no part of a statute is superfluous." [Internal quotation marks omitted.]).

Reading § 46b-66 (c) to apply to agreements to arbitrate entered into after a dissolution proceeding has commenced complies with both principles of statutory construction in that it harmonizes §§ 46b-66 (c) and 52-408, and ensures that neither provision is superfluous or meaningless. Under such a construction, the standard for the enforceability of arbitration agreements set forth in § 52-408 would apply to, at the very least, agreements to arbitrate contained in premarital agreements, thereby retaining the validity of § 52-408. At the same time, § 46b-66 (c) will continue to have meaning as it will apply to agreements entered into after a dissolution proceeding has begun.[5] This construction also avoids the apparent conflict between the statutes regarding the standard for determining the enforceability of arbitration agreements in that it applies each to factually distinct circumstances, which results in a coherent statutory scheme.

Furthermore, construing § 46b-66 (c) to apply to those arbitration agreements entered into after the commencement of a marital dissolution proceeding achieves harmony between § 46b-66 (c) and the Connecticut Premarital Agreement Act, specifically, General Statutes § 46b-36g (a) (2). Section 46b-36g (a) provides in relevant part: "A premarital agreement or amendment shall not be enforceable if the party against whom enforcement is sought proves that . . . (2) [t]he agreement was unconscionable when it was executed or when enforcement is sought . . . ." Construing § 46b-66 (c) to apply to arbitration clauses in premarital agreements creates a conflict in the standard for determining enforceability by supplanting the unconscionability standard prescribed in § 46b-36g (a) (2) with the "fair and equitable" standard of § 46b-66 (c) (1) (B).[6] As I stated previously, the legislature is presumed to have enacted harmonious statutory schemes, and this court must strive to construe statutes to avoid conflict. See, e.g., *Thomas* v. *Dept. of Developmental Services*, supra, 297 Conn. 404. Constructing § 46b-66 (c) to apply when arbitration agreements are entered into after a dissolution proceeding has commenced attains such a goal. Under such reading, the unconscio-

nability standard of § 46b-36g (a) (2) will continue to apply to premarital agreements, and the fair and equitable standard of § 46b-66 (c) (1) (B) will govern the enforceability of agreements made during the course of the dissolution proceeding.

Instead of attempting to read §§ 46b-66 (c) and 46b-36g (a) to be consistent, the majority relies on the canon of interpretation that directs courts to apply the more specific, rather than general, statutory provisions relating to a subject matter. See footnote 3 of the majority opinion. Generally, I agree with this principle of statutory construction, but only after it becomes clear that the statutes in question do not each have an exclusive area of operation or cannot be read in harmony. It is elementary that, when two or more statutory provisions are involved, this court will "construe the [provisions], if possible, to avoid conflict between them." (Internal quotation marks omitted.) *Efstathiadis* v. *Holder*, 317 Conn. 482, 493, 119 A.3d 552 (2015); see also id. ("when more than one [statutory provision] is involved, we presume that the legislature intended [those provisions] to be read together to create a harmonious body of law" [internal quotation marks omitted]); *Gipson* v. *Commissioner of Correction*, 257 Conn. 632, 649–51, 778 A.2d 121 (2001) (court is precluded from interpreting statutes to create conflict when statutes can be read in harmony). Thus, because §§ 46b-66 (c) and 46b-36g (a) can be read to avoid conflict, it is improper to resort to the canon on which the majority relies. The majority, in effect, rewrites the statute and allows a trial court to substitute its judgment regarding what is "fair and equitable" for what the legislature has required for the enforceability of a premarital agreement, namely, that such agreement is enforceable—and will not be second-guessed by the courts—unless the agreement was unconscionable at the time it was entered into or is unconscionable at the time enforcement is sought.

Interpreting § 46b-66 (c) to apply to agreements to arbitrate that are entered into after a dissolution proceeding has commenced is consistent with the public policy of this state. First, allowing parties to enter into premarital agreements containing arbitration clauses encourages the private resolution of family matters and settlement of financial affairs.[7] See, e.g., *Bedrick* v. *Bedrick*, 300 Conn. 691, 698, 17 A.3d 17 (2011) (state has interest in encouraging private agreements between prospective and divorcing spouses); *Billington* v. *Billington*, 220 Conn. 212, 221, 595 A.2d 1377 (1991) ("private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine" [internal quotation marks omitted]). For example, prospective spouses may enter into a premarital agreement that provides for the division of property in the event of divorce, and further agree to arbitrate any controversy arising from such agreement.

Under my reading of § 46b-66 (c), if the spouses decide to divorce, they could arbitrate their disagreements prior to filing for dissolution. After arbitration concludes, and the spouses have privately settled the distribution of property, they can file the dissolution action, asking the court to dissolve the marriage and to confirm the arbitration award. Under the majority's interpretation, however, the arbitration could not be commenced unless and until an action for dissolution has been filed and the trial court determines that it is fair and equitable to arbitrate. See General Statutes § 46b-66 (c) (1) ("an arbitration pursuant to [an] agreement [to arbitrate] *may proceed only after* the court has made a thorough inquiry and is satisfied that . . . (B) such agreement is fair and equitable under the circumstances" [emphasis added]). Thus, even if the divorcing parties do not contest the enforceability of the premarital agreement or the arbitration clause, and desire to arbitrate their dispute, the trial court may disregard their will and determine if arbitration would be, in its view, unfair and inequitable. Thus, the majority's construction of § 46b-66 (c) is inconsistent with this state's public policy of encouraging the private settlement of disputes.[8]

Second, arbitration is an efficient and economical method for resolving disputes and, therefore, is a favored tool for dispute resolution. See, e.g., *AFSCME, Council 4, Local 2663* v. *Dept. of Children & Families*, 317 Conn. 238, 249, 117 A.3d 470 (2015). Because arbitration is favored, judicial interference with the arbitration process is generally limited to minimize encroachment on the system's efficiency. See id. Construing § 46b-66 (c) not to apply to arbitration clauses in premarital agreements is consistent with our policy of encouraging the economical resolution of disputes through the use of arbitration. Under such a construction, divorcing spouses who wish to arbitrate their dispute may proceed to arbitration without the trial court's permission and, if they so desire, prior to the commencement of the dissolution action. Conversely, under the majority's interpretation, spouses who wish to proceed to arbitration will first be delayed by a need to file an action for dissolution and, then, will be further delayed while awaiting the trial court's permission to arbitrate.[9] Moreover, spouses who submit to arbitration prior to filing a dissolution action may find their arbitration orders subsequently vacated by a trial court that concludes that it was not fair and equitable to arbitrate.[10] Such a result is inconsistent with the well established principle that courts are not to second-guess the wisdom or fairness of premarital agreements into which prospective spouses voluntarily enter. Cf. *Crews* v. *Crews*, 295 Conn. 153, 167, 989 A.2d 1060 (2010) ("whether the trial court or this court thinks the [premarital] agreement was a good bargain for [either spouse] does not enter into the analysis of [its enforceability]"). The need to first seek court permission prior to arbitrating or the risk of hav-

ing an arbitration order vacated because the court does not think it was fair and equitable to arbitrate, despite the parties' intention to arbitrate, does not serve the goal of encouraging efficient and economical resolution of disputes. Moreover, construing § 46b-66 (c) to permit trial courts to prohibit spouses who wish to arbitrate from doing so, or to vacate an arbitration order that resulted from a consensual arbitration, leads to an absurd result.

Third, applying a different standard to determine the enforceability of an arbitration agreement, depending on when the agreement was entered into, is consistent with our practice, and the policy set forth by the legislature, of affording greater deference to agreements reached before prospective spouses marry. In *Bedrick* v. *Bedrick*, supra, 300 Conn. 691, this court recognized "that spouses do not contract under the same conditions as either prospective spouses or spouses who have determined to dissolve their marriage." Id., 701. Prospective spouses contract under nonadversarial conditions, and either party can freely reject unsatisfactory terms. See id. And, presumably, when the parties are first embarking on their marital journey, there is less concern regarding unfair dealing between them. On the other hand, postnuptial agreements are negotiated under circumstances in which one party may gain an unfair bargaining position by threatening dissolution if the other does not agree to the terms of the agreement. See id. Such a possibility persuaded this court that postnuptial agreements must be more closely scrutinized than premarital agreements. Id., 703. Similarly, when divorcing spouses negotiate a separation agreement, they have already decided to dissolve the marriage, and, therefore, an adversarial relationship exists. See id., 701. Under such circumstances, the court should more closely scrutinize the agreement to ensure that the spouses have dealt fairly with one another. The legislature has expressed its belief that premarital agreements and settlement agreements are not to be treated alike, enacting different standards regarding the enforceability of each agreement. Compare General Statutes § 46b-36g (a) (2) (premarital agreement is enforceable unless it is unconscionable), with General Statutes § 46b-66 (a) (settlement agreement concerning alimony or division of property will be reviewed to determine if it is fair and equitable under circumstances). It is logical to conclude that the legislature intended the same disparate treatment to exist between arbitration agreements entered into prior to marriage and agreements entered into after dissolution proceedings have commenced.[11]

Finally, I do not agree that my reading of § 46b-66 (c) is inconsistent with case law. In fact, I conclude that the case law is inapposite. First, neither this court nor the Appellate Court has ever addressed the question presented in the present case, namely, whether § 46b-

66 (c) applies to an arbitration clause in a premarital agreement. Second, the scant cases concerning § 46b-66 (c) are significantly distinct from the present case because they either involved agreements to arbitrate entered into after a dissolution action had been filed; see *Weyher* v. *Weyher*, 164 Conn. App. 734, 737–38, A.3d (2016) (judgment of dissolution provided that parties should divide personal property by agreement within thirty days and that, if parties were unable to agree, personal property division was to be submitted to binding arbitration); or situations in which the parties had not agreed to arbitrate at all. See *Barcelo* v. *Barcelo*, 158 Conn. App. 201, 224–25, 118 A.3d 657 (trial court abused its discretion in ordering parties to submit to arbitration concerning distribution of their personal property in absence of voluntary agreement between parties to submit to binding arbitration, as court cannot compel parties to arbitrate unless they have so agreed), cert. denied, 319 Conn. 910, 123 A.3d 882 (2015); *Budrawich* v. *Budrawich*, 156 Conn. App. 628, 648, 115 A.3d 39 (trial court improperly ordered parties to submit to binding arbitration to resolve issue of unreimbursed child care expenses "because the parties did not execute a voluntary arbitration agreement"), cert. denied, 317 Conn. 921, 118 A.3d 63 (2015).

For the foregoing reasons, I conclude that § 46b-66 (c) does not apply to agreements to arbitrate that are contained in premarital agreements. Because the trial court did not apply § 46b-66 (c) in the present case, however, I find no error in that regard. Accordingly, I concur in the judgment of this court and dissent in part.[12]

[1] The plaintiff concedes as much in her brief: "Although [the] plaintiff had moved for a thorough inquiry under § 46b-66 (c) . . . the trial court ultimately did not need to perform this inquiry because it concluded that the parties had not agreed to arbitrate arbitrability." (Citation omitted; internal quotation marks omitted.)

[2] Moreover, the arguments of the plaintiff's counsel demonstrate that she understood that the trial court's September 2, 2011 memorandum of decision *did not* apply § 46b-66 (c) but, instead, was based on the law of contracts. In discussing the September 2, 2011 memorandum of decision, the plaintiff's counsel stated: "Your Honor undertook a review of the [premarital] agreement, reviewed the arbitration demand that was filed or attached to [the plaintiff's] motion in limine, pendente lite, and determined in Your Honor's September 2 [2011] ruling that the only matter in dispute for arbitration [was] the sale of the joint asset . . . ." Counsel continued: "Your Honor has already undertaken *as a matter of contract interpretation* a review of the [premarital] agreement and has determined that it does not provide for damages claims to be asserted between the parties." (Emphasis added.)

[3] The majority concludes to the contrary, reasoning that the September 2, 2011 memorandum of decision arose from the plaintiff's motion in limine, pendente lite, in which the plaintiff requested the court to conduct a " 'thorough inquiry' " of the arbitration agreement under § 46b-66 (c). It further reasons that arguments on that motion addressed the applicability of the statute. See footnote 2 of the majority opinion. By this logic, it is equally plausible that the court *did not* apply the statute because the trial court also was considering the defendant's motions to stay judicial proceedings and to compel arbitration. In addition, the defendant argued that § 46b-66 (c) *did not* apply to the arbitration clause in the premarital agreement. In light of the defendant's motions and arguments, and the fact that the September 2, 2011 memorandum of decision does not cite § 46b-66 (c), mention a "thorough inquiry," or use the words "fair and equitable," it seems implausible—

perhaps impossible—that the court applied the statute. Furthermore, the plaintiff agrees that the court did not apply the statute, despite her request that it do so. See footnote 1 of this opinion.

The majority also asserts that the trial court's January 15, 2015 memorandum of decision, in which the court dissolved the marriage, referred to the plaintiff's motion in limine, pendente lite. See footnote 2 of the majority opinion. The court, *Heller, J.*, does refer to the plaintiff's motion in its recitation of the procedural history of the case. Judge Heller, however, does not conclude that Judge Malone in fact applied § 46b-66 (c) in response to such motion. In fact, after reviewing Judge Malone's September 2, 2011 memorandum of decision and subsequent articulation, Judge Heller concluded that Judge Malone "confirmed that one party could not maintain a claim for damages against the other party *under the* [*premarital*] *agreement*." (Emphasis added.) The majority also reasons that Judge Heller considered § 46b-66 (c) in reaching her January 15, 2015 decision. See footnote 2 of the majority opinion. Although that may be true, it seems irrelevant that the court considered the statute at that point, after arbitration was completed. First, the statute requires the inquiry to be made prior to the arbitration submission. Second, the error of which the defendant complained was that Judge Malone improperly limited the scope of arbitration by applying § 46b-66 (c) to the agreement to arbitrate between the plaintiff and the defendant. Thus, the fact that Judge Heller subsequently applied the statute has no bearing on the claimed error. Third, the purported application of the statute by Judge Heller came after the arbitration was completed, and, therefore, it could not be the application of the statute that improperly limited arbitration. Fourth, the fact that Judge Heller applied the statute likely indicates that she did not believe that Judge Malone conducted the inquiry required by § 46b-66 (c).

Finally, the majority faults the parties for not seeking an articulation regarding whether the trial court applied § 46b-66 (c). See id. If the majority believes that clarification is necessary, however, it should order an articulation by the trial court. See Practice Book § 60-5 ("[i]f the [reviewing] court deems it necessary to the proper disposition of the cause, it may order a further articulation of the basis of the trial court's factual findings or decision"); Practice Book § 61-10 (b) ("The failure of any party on appeal to seek articulation . . . shall not be the sole ground upon which the [reviewing] court declines to review any issue or claim on appeal. If the court determines that articulation of the trial court decision is appropriate, it may . . . order articulation by the trial court . . . .").

[4] In reading § 46b-66 (c) to prescribe a condition precedent to chapter 909's application to arbitration agreements between parties to a marriage, the majority contends that it has "harmoni[zed]" the statutory scheme. Footnote 4 of the majority opinion. First, I note that this is an unlikely reading. As I already explained, § 52-408, the first section in chapter 909 of the General Statutes, provides for arbitration agreements between parties to a marriage, and it provides that such agreements "shall be valid, irrevocable and enforceable, *except* when there exists sufficient cause at law or in equity *for the avoidance of written contracts generally*." (Emphasis added.) The statute makes no reference to § 46b-66 (c), nor does it provide that arbitration agreements between parties to a marriage are valid except when they are not fair and equitable. Second, the majority contends that the avoidance clause of § 52-408, which provides for the enforceability of arbitration agreements "except when there exists sufficient cause at law or in equity for the avoidance of written contracts generally," is not rendered meaningless by its reading of § 46b-66 (c) because it will apply to agreements that the court determines are "fair and equitable." Footnote 4 of the majority opinion. By requiring arbitration agreements to clear the higher hurdle established by § 46b-66 (c) first, however, the majority has ensured that § 52-408 will apply only to agreements that will pass its enforcement test. Therefore, its reading has rendered § 52-408 meaningless.

[5] The question of what standard will apply to agreements falling between these two extremes, such as arbitration clauses contained in postnuptial agreements or agreements to arbitrate reached after the parties have decided to divorce but before an action for dissolution has been filed, is not before the court in the present case. Therefore, I do not resolve that question. I do note, however, that it is possible that arbitration clauses in postnuptial agreements will be governed by the standard, previously articulated by this court, that "a court may enforce a postnuptial agreement only if it complies with applicable contract principles, and the terms of the agreement are both fair and equitable at the time of execution and not unconscionable at the

time of dissolution." (Footnote omitted.) *Bedrick* v. *Bedrick*, 300 Conn. 691, 703–704, 17 A.3d 17 (2011). In addition, agreements to arbitrate entered into after the parties have decided to dissolve their marriage but before either party has filed for dissolution may be settlement agreements governed by § 46b-66 (a). See General Statutes § 46b-66 (a) ("[i]n any case under this chapter where the parties have submitted to the court an agreement . . . concerning alimony or the disposition of property, the court shall . . . determine whether the agreement of the spouses is fair and equitable under all the circumstances").

[6] An arbitration clause in a premarital agreement would also be unenforceable if the party contesting enforcement establishes that "[s]uch party did not execute the agreement voluntarily"; General Statutes § 46b-36g (a) (1); or if, "[b]efore execution of the agreement, such party was not provided a fair and reasonable disclosure of the amount, character and value of property, financial obligations and income of the other party"; General Statutes § 46b-36g (a) (3); or if "[s]uch party was not afforded a reasonable opportunity to consult with independent counsel." General Statutes § 46b-36g (a) (4).

[7] The majority argues that my reading of § 46b-66 (c) makes arbitration clauses in premarital agreements less desirable because the parties will not be afforded the protections of § 46b-66 (c). See part I A of the majority opinion. I disagree. My reading ensures that the courts will not meddle in the parties' private resolution of their marital affairs. My understanding of the purpose of premarital agreements is to displace the discretion of the dissolution court by privately deciding issues of property distribution or alimony; see, e.g., *Hannon* v. *Hannon*, 740 So. 2d 1181, 1187 (Fla. App. 1999) ("[a] primary purpose of [a premarital] agreement is to modify or shrink the general discretion of the dissolution of marriage judge in doing equity between the parties"); and, therefore, a reading of § 46b-66 (c) that limits the dissolution court's ability to interfere with such agreements, it seems to me, makes them more, not less, desirable.

[8] Because the majority's interpretation of § 46b-66 (c) has the potential to supersede the will of divorcing spouses, even when both spouses wish to arbitrate their disagreement, it reaches an absurd result. It is fundamental, however, that "[w]e construe a statute in a manner that will not . . . lead to absurd results." (Internal quotation marks omitted.) *Gould* v. *Freedom of Information Commission*, 314 Conn. 802, 816, 104 A.3d 727 (2014).

[9] The facts of the present case provide an apt illustration. The defendant filed his motions to stay judicial proceedings and to compel arbitration on April 6, 2011, and the plaintiff filed her motion in limine, pendente lite, requesting a thorough inquiry into the arbitration agreement, on April 12, 2011. The trial court, however, did not rule on these motions or submit the matter to arbitration until September 2, 2011. Moreover, the efficiency of arbitration was dwarfed by the need for the parties' attorneys to file motions and briefs and to appear for arguments on two separate dates.

[10] There exists a possible situation that is even more troubling. Prior to marrying, two spouses enter into a premarital agreement containing an arbitration clause. Subsequently, they decide to divorce. Before filing for dissolution, however, they agree to submit their property dispute to arbitration, and neither spouse thinks it is unfair or inequitable to do so. At the conclusion of the arbitration, one of the spouses is dissatisfied with the arbitrator's award and files an application with the Superior Court to vacate the order. Generally, it is difficult to vacate the order of an arbitrator. Section 52-418 (a), a provision of chapter 909 of the General Statutes, provides: "Upon the application of any party to an arbitration, the superior court . . . shall make an order vacating the award if it finds any of the following defects: (1) If the award has been procured by corruption, fraud or undue means; (2) if there has been evident partiality or corruption on the part of any arbitrator; (3) if the arbitrators have been guilty of misconduct in refusing to postpone the hearing upon sufficient cause shown or in refusing to hear evidence pertinent and material to the controversy or of any other action by which the rights of any party have been prejudiced; or (4) if the arbitrators have exceeded their powers or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." According to the majority, however, before the court can apply chapter 909 to an agreement to arbitrate between parties to a marriage, the court must first determine that such agreement is fair and equitable. Thus, the dissatisfied spouse will first be allowed to argue that the agreement to arbitrate was unfair or inequitable, a standard that undoubtedly is easier to satisfy than the standard applicable to vacating an arbitration order.

[11] In light of the different treatment afforded to premarital, postnuptial,

and settlement agreements, the majority's contention that "[i]t is not reasonable to think that the legislature intended to afford parties who agree to arbitrate controversies related to dissolution different protections based solely on when they entered into that agreement" is contrary to reality and simply unwarranted. Part I A of the majority opinion.

The majority also suggests that it is absurd to apply one standard to arbitration agreements entered into one day before the dissolution action is filed and a different standard to arbitration agreements entered into the day after the dissolution action is filed. See id. It is unclear, however, what standard would apply to arbitration agreements that are entered into prior to the filing of a dissolution action but after the parties have already decided to divorce. It certainly would not be the unconscionability standard of § 46b-36g (a) (2) because such an agreement would not be a premarital agreement. See General Statutes § 46b-36b (1) (defining "premarital agreement" as "an agreement between *prospective spouses* made *in contemplation* of marriage" [emphasis added]). It is possible that such agreements would be governed by § 46b-66 (a), which would require the court to consider whether the agreement is "fair and equitable . . . ." General Statutes § 46b-66 (a). That question is not before the court in the present case, however, and, therefore, it would be inappropriate to decide it.

[12] The defendant does not argue on appeal that the trial court incorrectly determined that the parties did not agree to arbitrate arbitrability. Instead, he contends that the trial court improperly limited the scope of arbitration by applying § 46b-66 (c). In the alternative, the defendant argues that, if § 46b-66 (c) applies, the agreement was fair and equitable, and, when conducting a thorough inquiry under § 46b-66 (c), the court is not to consider the issues to be arbitrated. To the extent that the defendant's statement that "[t]he [court, *Malone, J.*] erred by contravening the terms of the parties' agreement and [by] concluding that, absent the parties' agreement, it would determine . . . what issues would be submitted to arbitration" was an attempt to claim that the trial court incorrectly concluded that it, rather than the arbitrator, was to determine arbitrability, he has not adequately briefed that claim. See, e.g., *Electrical Contractors, Inc.* v. *Dept. of Education*, 303 Conn. 402, 444, 35 A.3d 188 (2012) ("[W]e are not obligated to consider issues that are not adequately briefed. . . . Whe[n] an issue is merely mentioned, but not briefed beyond a bare assertion of the claim, it is deemed to have been waived. . . . In addition, mere conclusory assertions regarding a claim, with no mention of relevant authority and minimal or no citations from the record, will not suffice." [Internal quotation marks omitted.]). In his reply brief, the defendant does argue, in response to the plaintiff's argument to the contrary, that the parties agreed to arbitrate arbitrability. Nevertheless, his argument is styled as a retort to the plaintiff's contrary contention and is not a claim of trial court error. Moreover, "it is well settled that this court generally will not consider an argument raised for the first time in a reply brief." *Fairfield Merrittview Ltd. Partnership* v. *Norwalk*, 320 Conn. 535, 561, 133 A.3d 140 (2016); see also *Electrical Contractors, Inc.* v. *Dept. of Education*, supra, 444 n.40 ("[c]laims are also inadequately briefed when they are raised for the first time in a reply brief").

---