Matter of Reese v Reese (2019 NY Slip Op 07403)





Matter of Reese v Reese


2019 NY Slip Op 07403


Decided on October 16, 2019


Appellate Division, Second Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 16, 2019
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

WILLIAM F. MASTRO, J.P.
JOHN M. LEVENTHAL
ANGELA G. IANNACCI
LINDA CHRISTOPHER, JJ.


2018-14709
2018-14710
2018-14711
2018-14712
 (Docket Nos. F-4074-17/17A/17B)

[*1]In the Matter of Morgan C. Reese, appellant,
v
Marissa A. Reese, respondent. (Proceeding No. 1)
In the Matter of Marissa A. Reese, respondent,
v
Morgan C. Reese, appellant. (Proceeding No. 2)


Morgan C. Reese, Hicksville, NY, appellant pro se.
Law Offices of Jay D. Raxenberg, P.C., Garden City, NY, for respondent.



DECISION & ORDER
In related proceedings pursuant to Family Court Act article 4, the father appeals from four orders of the Family Court, Nassau County (Linda K. Mejias, J.), all dated October 16, 2018. The first order denied the father's objections to a fact-finding order of the same court (Lisa M. Williams, S.M.), dated August 15, 2018, which determined, after a hearing, inter alia, that the father failed to demonstrate a sufficient change in circumstances to warrant a downward modification of his child support obligation and that the mother established her entitlement to an award of child support arrears. The second order denied the father's objections to an order of dismissal of the same court (Lisa M. Williams, S.M.), dated August 15, 2018, which dismissed his petition for a downward modification of his child support obligation. The third order denied the father's objections to an order of the same court (Lisa M. Williams, S.M.), dated August 15, 2018, which granted the mother's motion for an award of attorneys' fees and denied the father's motion for an award of attorneys' fees. The fourth order (1) denied the father's objections to an order of disposition of the same court (Lisa M. Williams, S.M.), dated August 15, 2018, which, inter alia, determined that the father was in contempt for willfully violating an order to pay child support, and directed the entry of a judgment against him in the sum of $65,900 for child support arrears, (2) confirmed the recommendation of the Support Magistrate in the order of disposition that the father be committed to jail for a period of 180 days if he failed to purge his contempt by paying the arrears, and (3) denied the father's objections to a judgment of the same court (Lisa M. Williams, S.M.), dated August 15, 2018, in favor of the mother and against the father in the principal sum of $65,900.
ORDERED that the appeal from so much of the fourth order dated October 16, 2018, as confirmed the recommendation of the Support Magistrate in the order of disposition dated August 15, 2018, that the father be committed to jail for a period of 180 days if he failed to purge his contempt, is dismissed as academic; and it is further,
ORDERED that the first, second, and third orders dated October 16, 2018, are affirmed; and it is further,
ORDERED that the fourth order dated October 16, 2018, is affirmed insofar as reviewed; and it is further,
ORDERED that one bill of costs is awarded to the mother.
The parties, who are the parents of three children, were married in 1998. Prior to their marriage, they entered into a prenuptial agreement which provided, inter alia, that each party would retain ownership of their separate property and would retain the right to sell or dispose of that property.
The parties were divorced in Connecticut on February 3, 2012, pursuant to a judgment which incorporated the terms of a separation agreement. The separation agreement provided, inter alia, that the father would pay aggregate child support of $4,400 monthly, plus $600 monthly for the children's extracurricular activities, $9,000 annually for the children's camp and summer activities, and 75% of the children's medical expenses. The separation agreement expressly acknowledged that this represented a deviation from the Connecticut Child Support Guidelines. At the time that the parties divorced, a trust provided the father's primary source of income and constituted the principal source of his child support payments.
On February 28, 2017, the father registered the Connecticut order in New York and petitioned in the Family Court, Nassau County, for a downward modification of his support obligation on the basis that the exhaustion of the trust account, which had covered his living expenses and child support payments, constituted a substantial change in circumstances. Subsequently, the mother petitioned for enforcement of the father's support obligation, stating that the father had paid only $1,000 for child support since March 1, 2017. Both parties also moved for an award of attorneys' fees.
After a hearing on the parties' petitions and motions, the Support Magistrate issued a series of four orders and a judgment which, collectively, inter alia, dismissed the father's petition for a downward modification of his child support obligation, awarded the mother child support arrears in the sum of $65,900, determined that the father was in contempt for willfully violating an order of child support, recommended that the father be committed to jail for a period of 180 days if he failed to purge his contempt by paying the arrears, denied the father's motion for an award of attorneys' fees, and granted the mother's motion for an award of attorneys' fees. The father filed objections to each of the orders and the judgment. The Family Court, in four separate orders, denied the father's objections and confirmed the Support Magistrate's recommendation that the father be committed to jail. The father appeals.
Pursuant to Family Court Act article 5-B, where a party registers an out-of-state support order in this state, a New York court may modify or enforce that order (see Family Ct Act §§ 580-601, 580-611[a], [b]). "Modification of a registered child support order is subject to the same requirements, procedures, and defenses that apply to the modification of an order issued by a tribunal of this state" (Family Ct Act § 580-611[b]). However, the law of the issuing state governs the support obligation, and the courts of this state may not modify any aspect of the order which could not be modified in the issuing state (see Family Ct Act §§ 580-604[a][1]; 580-611[c]; Matter of Epstein v Shoshani, 66 AD3d 1014, 1017). Accordingly, we apply the substantive law of Connecticut, as the Family Court did.
Like the law of New York (see Family Ct Act § 451[3]), Connecticut law provides that a court may modify an order of support based upon a substantial change in circumstances (see Conn Gen Stat § 46b-86[a]). Although Connecticut law also permits modification on the ground that a parent's support obligation deviates substantially from that state's child support guidelines, contrary to the father's contention, that ground is unavailable where, as here, the parties' separation agreement expressly recites criteria for deviating from the guidelines (see id.; Becue v Becue, 185 [*2]Conn App 813, 850-851, 198 A3d 601, 624).
Under Connecticut law, where a modification petition is based upon an alleged change in circumstances, the court must first determine whether there has been a substantial change in the circumstances of one or both parties and, if so, may modify the obligor's support obligation (see De Almeida-Kennedy v Kennedy, 188 Conn App 670, 680-681, 205 A3d 704, 712; Bolat v Bolat, 182 Conn App 468, 476, 190 A3d 96, 102). The party seeking modification has the burden to "clearly and definitely establish the occurrence of a substantial change in the circumstances of either party that makes the continuation of the prior order unfair and improper"' (De Almeida-Kennedy v Kennedy, 188 Conn App at 681, 205 A3d at 712, quoting Weinstein v Weinstein, 104 Conn App 482, 492, 934 A2d 306, 313). "[T]o qualify as a substantial change in circumstances, a change or alleged inability to pay must be excusable and not brought about by the defendant's own fault. Thus, a mere [i]nability to pay does not automatically entitle a party to a decrease of [a support] order" (Zilkha v Zilkha, 167 Conn App 480, 488-489, 144 A3d 447, 453 [internal quotation marks omitted]; see Malpeso v Malpeso, 165 Conn App 151, 182, 138 A3d 1069, 1089).
As in New York, in determining ability to pay, Connecticut looks not merely to a party's actual income, but also to the party's earning capacity and may consider, inter alia, the party's previous earnings, lifestyle, personal expenses, whether the party has willfully restricted his or her
earning capacity to avoid support obligations, and the party's vocational skills, employability, age, and health (see McKeon v Lennon, 155 Conn App 423, 432, 109 A3d 986, 993, revd in part on other grounds 321 Conn 323, 336, 138 A3d 242, 249; Fox v Fox, 152 Conn App 611, 634, 99 A3d 1206, 1221; Regs, Conn State Agencies § 46b-215a-1[11]; see also Morille-Hinds v Hinds, 169 AD3d 896, 899; Matter of Weissbach v Weissbach, 169 AD3d 702, 703).
The father correctly notes that, pursuant to Connecticut law, "[o]nce property is distributed in accordance with a dissolution decree, the court ceases to have jurisdiction over that property" and "may not consider the liquidation of awarded property as income" (McKeon v Lennon, 155 Conn App at 439, 109 A3d at 996; see McKeon v Lennon, 321 Conn at 346, 138 A3d at 255; Simms v Simms, 283 Conn 494, 506, 927 A2d 894, 900-901). Nevertheless, Connecticut has "interpreted broadly the definition of gross income contained in the guidelines to include items that, in effect, increase the amount of a parent's income that is available for child support purposes" (McKeon v Lennon, 321 Conn at 345, 138 A3d at 255 [internal quotation marks omitted]). Accordingly, although the Family Court could not modify the parties' property division or direct the father to sell property to which he retained sole title pursuant to the parties' prenuptial agreement, "[t]hat does not mean . . . that court had no authority to consider the value of the parties' assets in determining the amount of the modification or, in appropriate circumstances, to order the [father] to pay [child support] if doing so may require him to invade his assets" (Simms v Simms, 283 Conn at 505, 927 A2d at 901).
Here, the Support Magistrate providently exercised her discretion in considering the father's assets, which the evidence established had always been his primary source of support, in finding that he had failed to demonstrate a change in circumstances rendering his support obligation unjust or inequitable (see Mountain v Mountain, 189 Conn App 228, 233-234, 206 A3d 802, 804-805). Accordingly, we agree with the Family Court's denial of the father's objections to the Support Magistrate's determination that the father failed to demonstrate a change in circumstances warranting a downward modification of his support obligation and the Support Magistrate's dismissal of the father's petition for a downward modification.
With regard to the father's failure to pay child support, under Connecticut law, "[a] finding of noncompliance alone will not support a judgment of contempt" and must instead be coupled with a finding of willfulness (McKeon v Lennon, 155 Conn App at 450, 109 A3d at 1002; see Becue v Becue, 185 Conn App at 824, 198 A3d at 610; Malpeso v Malpeso, 165 Conn App at 181, 138 A3d at 1088). "[T]he inability of [a] defendant to obey an order of the court, without fault on his [or her] part, is a good defense to the charge of contempt . . . The contemnor must establish that he [or she] cannot comply, or was unable to do so" (Bolat v Bolat, 182 Conn App at 480, 190 A3d at 104 [internal quotation marks omitted]; see Malpeso v Malpeso, 165 Conn App at 182, 138 [*3]A3d at 1089). An obligor may not engage in "self-help" or unilaterally modify the support obligation without the permission of the court (Becue v Becue, 185 Conn App at 827, 828, 198 A3d at 612; see Malpeso v Malpeso, 165 Conn App at 183, 138 A3d at 1089; Nuzzi v Nuzzi, 164 Conn App 751, 770-771, 138 A3d 979, 992).
Here, the mother established that, during the period for which she sought arrears, the father had assets from which he could have satisfied his support obligation. In response, the father offered no "competent, credible evidence of his inability to make the required payments" (Matter of Powers v Powers, 86 NY2d 63, 70; see Matter of Gorsky v Kessler, 133 AD3d 854, 855). The father likewise failed to demonstrate that enforcing the existing order would be unjust or inequitable (see Mountain v Mountain, 189 Conn App at 232-233, 206 A3d at 804). Under both New York and Connecticut law, the Support Magistrate's credibility determinations are entitled to deference (see Matter of Gharachorloo v Regeer, 173 AD3d 1025; Matter of Robinson v Thomas, 167 AD3d 749, 751; De Almeida-Kennedy v Kennedy, 188 Conn App at 680, 205 A3d at 712; Malpeso v Malpeso, 165 Conn App at 182, 138 A3d at 1089), and we discern no basis to disturb them on the present record. Accordingly, we agree with the Family Court's denial of the father's objections to the Support Magistrate's determination finding that the father willfully violated the order of support and was in contempt pursuant to Connecticut law (see Conn Gen Stat § 46b-87), and that the mother was entitled to the payment of arrears in the sum of $65,900 as well as the money judgment awarding her that sum. However, inasmuch as the father purged himself of his contempt prior to being committed to jail, his appeal from so much of the court's fourth order as confirmed the Support Magistrate's recommendation that the father be committed to jail must be dismissed as academic (see Matter of Leonard v Leonard, 150 AD3d 1242, 1243; Cutroneo v Cutroneo, 140 AD3d 1006).
Connecticut law further provides that reasonable attorneys' fees may be awarded in a contempt proceeding (see Conn Gen Stat § 46b-87; Becue v Becue, 185 Conn App at 854, 198 A3d at 627). The award of attorneys' fees in such matters "is punitive, rather than compensatory" (Becue v Becue, 185 Conn App at 855, 198 A3d at 627 [internal quotation marks omitted]; Larson v Larson, 138 Conn App 272, 277, 51 A3d 411, 415 [internal quotation marks omitted]), and "may be imposed without balancing the parties' respective financial abilities" (Larson v Larson, 138 Conn App at 277-278, 51 A3d at 415 [internal quotation marks omitted]).
Here, the evidence supported the Support Magistrate's finding that the father chose to use his substantial assets to benefit himself rather than to meet his obligations to his children, and that his claim of an inability to pay lacked credibility. The evidence further established that in addition to forcing the mother to bear the full burden of supporting the children, he also subjected her to a lengthy hearing and voluminous motion practice, forcing her to incur substantial attorneys' fees and costs while he was able to use his own substantial assets to raise $62,500 to pay his attorneys' fees. We therefore agree with the Family Court's denial of the father's objections to the Support Magistrate's determination that the mother was entitled to an award of attorneys' fees and that the father was not entitled to an award of attorneys' fees.
The father's remaining contentions are without merit.
MASTRO, J.P., LEVENTHAL, IANNACCI and CHRISTOPHER, JJ., concur.
ENTER:
Aprilanne Agostino
Clerk of the Court